HORACE FAIRBANKS ET AL.

V.

HENRY MALLOY.

1. Contract—Replevin.—A written contract, in which it was expressly agreed that the title to the property should remain in the vendor until full payment was made, and that upon default of the vendee, in performing any of the terms of the contract, the vendors might take posse sion and remove the same and collect reasonable charges for damages and expenses, and until such default the vendee might retain the use and posses-

sion of the property, the vendee took the property, used it, and made a partial payment. Upon default in payment, the vendor brought an action of replevin. *Held*, that the vendor is entitled to recover the possession of the property, according to the terms of the contract, without first tendering the money paid.

2. Same.—If the vendee, by reason of a breach of warranty or other cause, has a just demand for a return of part or all of the purchase money, the action of replevin is not an appropriate proceeding in which to determine such question. The judgment for the vendor therein does not preclude the vendee from a suit for that purpose.

Appeal from the Circuit Court of Madison county; the Hon. William H. Snyder, Judge, presiding. Opinion filed April 6, 1885.

Mr. Alexander W. Hope, for appellants.

Mr. George F. McNulty, and Messrs. Wise & Davis, for appellee.

Wall, J. This was an action in replevin by the appellants against the appellee to recover possession of a pump and boiler. The declaration was in the usual form with counts in the *cepit* and *detinet*, to which the defendant filed pleas of *non cepit*, *non detinet* and property in defendant.

There was a trial by the court, a jury being waived, and a finding for the defendant with judgment *retorno habendo* and for cost, to which plaintiffs excepted; and they bring the case here and assign error upon the rulings and finding of the court.

It appears from the record that the plaintiff sold to defendant a pump and boiler complete on the 7th of April, 1883, for $388, of which $200 was to be paid in thirty days, the balance in one year with interest. On the 11th of May, 1883, the boiler was exchanged for a larger one, for which fifty dollars additional was to be paid, and on the 14th of the same month the pump was exchanged for a larger one, for which seventy-five dollars additional was to be paid. On the last mentioned day the sum of $200 was paid, but no other payments were ever made, and when this proceeding was commenced there was unpaid and due upon these three purchases the sum of $313.

When the first purchase was made, the defendant signed and delivered to the plaintiffs a written contract in the form of an order for the property, specifying the price to be paid, terms of sale, etc., and when the exchanges were made, similar contracts were executed, so that when the last pump was delivered the plaintiffs held three of these contracts, all of which were in the same form, and in each of which are the following provisions: "And it is hereby agreed by the undersigned, that Fairbanks and Company do not relinquish their title to said boiler pump and fixtures, until they are fully paid for; and upon default of the undersigned in performance of any of the terms of this agreement, the said Fairbanks and Company may declare the whole amount agreed to be paid by this contract due and payable, and they or their agents may, without process of law, take possession of, and remove said boiler and fixtures, and collect reasonable charges for damages and expenses.

If the said Fairbanks & Co. find it necessary to place this contract in the hands of an attorney for collection, I or we agree to pay all charges and expenses for collecting the same. It is also agreed that the undersigned may retain possession of and use the said boiler and fixtures until he shall make default in the terms of this agreement. The undersigned agrees to furnish lumber to put in foundation and pay freight.

Witness, } Signed,
E. C. Parker. } Henry Malloy."

There was evidence also that when the first contract of April 7th was made the following written warranty was given to the defendant.

"Coal Branch, April 7, 1883.

We hereby warrant the pump this day sold to Henry Malloy to be first class in every respect, and to be capable of pumping eighty gallons of water per minute, when in good working condition.

Signed, Fairbanks & Co.
Per Hill."

And the defendant was permitted to testify against the obection of the plaintiffs, that the contracts of May 11th and

14th were made with an express verbal warranty that the pump and boiler would pump all the water out of defendant's coal mine.

He also testified against objection, that plaintiffs knew the purpose for which he wished to use the pump when the first purchase was made, and proved by his own testimony and that of other witnesses, that neither of the pumps nor boiler could be made to work well and perform the service for which he had intended them. On the other hand, the plaintiffs denied that there was any warranty whatever except the written one, and that while they knew the purpose for which the defendant wished to use the pumps, they did not know nor did any one know how much water had to be pumped out; that the mine of defendant was connected with a number of others which had been abandoned by the owners and flooded with water; that neither the area nor supply of water could be ascertained, and that they advised defendant to get a larger and more powerful pump than either of them selected by him, but that he relied upon his own judgment.

They further testified that defendant improperly and unskill-fully managed the pumps—suffered the boiler to become coated with scales from the use of impure water and foul with mud, thereby diminishing its power; and that the pump worked well, raising the amount of water specified in the warranty when it was properly handled, going into details which need not be stated here. It appeared also that when the plaintiffs demanded the property the defendant had moved it to another place, was using it for another purpose, and that it had deteriorated in value more than the amount paid on the purchase money.

The important question is as to the construction and legal effect of this contract. It will be noticed that there was an express agreement that the title to the property should remain in the plaintiffs until full payment was made, and that in default of the purchaser in performing any of the terms of the contract the plaintiffs might take possession and remove the pump and boiler and fixtures and collect reasonable charges for damages and expenses, and that until such default the par-

Fairbanks v. Malloy.

chaser might retain the use and possession of the property. Here is a clear and definite agreement between parties competent to make it and there would seem to be no difficulty in enforcing it according to the plain and ordinary meaning of the language employed. It is insisted, however, by counsel for appellee, that this was in effect a conditional sale merely, with a right of rescission in the vendor, and that if such right was exercised it could only be upon placing the vendor *in statu quo*, which would require a return or offer to return of the purchase money paid. This position, though plausible, we deem unsound when the peculiar facts of the case are considered.

It is true that contracts somewhat like this have been held by our Supreme Court to be conditional sales in which the right of rescission was reserved to the vendor and that such a contract, legal and valid as between the parties, is subject to the risk on the part of the vendor of losing his lien in case the rights of third parties intervene, as by levy of execution against the purchaser, etc. Murch v. Wright, 46 Ill. 487; Lucas v. Campbell, 88 Ill. 448; Latham v. Sumner, 89 Ill. 233.

We think the law is also well settled that in such cases where goods are sold at a fixed price to be paid on a certain day, and delivery is made upon an agreement express or implied that until the price is paid the title is to remain in the vendor, payment is a condition precedent, and until performance the property is not vested in the purchaser, and that the vendor may maintain replevin for the property upon default of payment. It has been suggested by some courts in cases of this sort that this class of contracts may be treated as conditional sales by which the property was not to vest in the purchaser until the price was paid, or as executory contracts to be completed upon the performance of the same condition; but upon either construction the property in the goods is not changed. Benjamin on Sales, 3d Ed., Sec. 320, and note *d* and authorities there cited. It is also a general rule that where one party to a contract desires to rescind it he must place the other *in statu quo*, but we can not see our way clear to apply

that rule in the present case in the manner suggested by coun-
sel.    This contract distinctly provides that upon default of
payment the vendor may resume the possession of the prop-
erty, but it does not provide that the vendor shall first return
the money paid.

It is clear such a condition was not intended, and as it was
not inserted by the parties, it should not be added by the law.
To do so would be to do violence to the rights of the parties,
and would subject the vendor to a loss in respect of the use
and diminished value of the property not contemplated at the
time and which it would be unreasonable to impose upon him
without his consent.    Strictly speaking, his action in retaking
the property is not a rescission of the contract but in pursu-
ance of it.    The contract so provides, and it was undoubtedly
the intention of the parties that the right thus given might
be exercised without the condition suggested.    For a similar
view of such a contract see Latham v. Sumner, 89 Ill. 233,
where the vendor had resumed possession without objection
by the vendee and where the latter was seeking to recover
the money paid on the contract.

We think the plaintiffs below were entitled to recover the
possession of the property according to the terms of the con-
tract without first tendering the money paid.    In such cases it
may be that by reason of a breach of warranty or other causes
the purchaser would have a just demand for a return of part
or all of the purchase money, but the action of replevin is not
an appropriate proceeding in which to determine a question
of that sort, and the judgment for plaintiff therein does not
preclude the purchaser from a suit for that purpose.    Benja-
min on Sales, *supra;* Preston v. Whitney, 23 Mich. 260;
Howe Machine Co. v. Willie, 85 Ill. 333; Latham v. Sumner,
*supra.*

Were it, however, convenient in this form of action to ex-
amine and determine the right of the parties in this respect,
we are of the opinion that upon the record before us the loss
of the plaintiff in the use and depreciation of the property, etc.,
exceeded the sum paid by defendant, and from this standpoint
the finding for defendant was erroneous.    See Latham v.

Sumner, *supra.* It is objected by counsel for appellee that there was no such exception taken by the plaintiff to the rulings of the trial court as will authorize this court to consider the errors assigned. We have examined the record and find in the bill of exceptions that the plaintiffs did, at the proper time, except to the decision of the court, and that the exception so taken is sufficiently formal. D. M. Force Mfg. Co. v. Horton, 74 Ill. 310.

The judgment will be reversed and the cause remanded.

Reversed and remanded.