## HAYS v. JORDAN & COMPANY.

1. Under the married woman's act of 1866, a contract made by a wife who has no separate estate, whether executed or executory, is binding upon her, as it would be if she owned property at the time of her marriage or afterwards acquired it by gift or inheritance; the intent being to confer upon her the same rights and privileges as to acquiring property that she had before marriage,

and the power to contract necessarily following with the power to hold in her own right property given to or inherited by her.

2. Where notes, each forming part of the same contract, provide that "the piano for the use of which this note is given is and shall remain the property of" the promisees, "and in default of payment the said piano shall be returned to them or their agent in good order, and they or their agent are authorized to take possession of the same without process of law"; and "on payment of this note (given for the use of this piano), a bill of sale will be given and title of the same passed to the lessee, but until then the title to the piano shall remain in" the promisees; and the aggregate amount of the notes is made payable within six months from the date of the transaction, and is the stipulated value of the piano and the consideration for the bill of sale to be given when the full amount is paid, the contract is not a lease but a conditional sale with title reserved in the vendors until the purchase price is paid. Where, after payment of one of the notes and default in subsequent payment, the vendors bring bail trover and elect to take the piano under the code, §3564, before they can recover it they must return the amount paid them, after deducting a proper sum for the use of the instrument if such use was of any value to the defendant; such sum with interest to be found by the jury from the evidence, and the piano to be returned to the plaintiffs upon payment to the defendant of this sum, judgment for which can be entered by the court for the defendant upon 'the bond of the plaintiffs, given by them on taking possession of the property.

July 28, 1890.

Trover. Contracts. Leases. Sales. Married women. Practice. Equity. Verdict. Before Judge GUERRY. Early superior court. October term, 1889.

Reported in the decision.

R. H. POWELL, for plaintiff in error.

JOHN R. IRWIN, *contra.*

SIMMONS, Justice.

Jordan & Co. sued Mrs. Sudie Hays in bail-trover for an "opera piano," alleged to be of the value of $350, and also, in the same action, sued her upon an alleged indebtedness of $35 attorney's fees. The piano was seized by the sheriff, and Mrs. Hays having failed to give the bond required by law to retain the same, the plaintiffs gave bond and took possession of the piano. Mrs.

Hays filed three pleas:   (1) that at the time she made
the contract with the plaintiffs she was a married
woman and had no separate estate, and for this reason
the contract is void as to her; (2) that when the piano
was purchased, Jordan & Co. warranted the same to her
for five years against any defects in workmanship, ma-
terial or performance under fair usage.   She claimed
that there was a breach of warranty, for the reason that
the keys of the piano were so arranged and constructed
as to make them too tight and prevent the instrument
from performing under fair usage, and that it is not a
good, substantial and well-toned instrument, and that
it was constructed so defectively as to allow mice to get
into the keys and build nests therein.   (3) The third
was an equitable plea, in which she alleged that she
gave to the plaintiffs her notes for the $350, bearing
date August 4th, 1888, one being for $100 due October
1st, 1888, one for $150 due December 1st, 1888, and one
for $100 due February 1st, 1889; and that she paid the
first note when it fell due, but upon ascertaining that
the piano did not come up to the warranty, she offered
to return it to the plaintiffs if they would return the
money she had paid thereon; and that they refused to
to do this.   She prayed that, as they had elected to take
a verdict for the return of the piano itself instead of a
verdict for damages, she might have a judgment against
them for the $100 which she had paid upon the piano.
Upon the trial, the jury, under the charge of the court,
returned a verdict in favor of the plaintiffs for the
piano.   The defendant made a motion for a new trial
on the several grounds therein set forth, which was
overruled, and she excepted.

   1. The 3d ground of the original motion and the
4th of the amended motion, may be treated to-
gether.   The defendant requested the court to charge
the jury as follows:   "If you should find from the evi-

dence that the plaintiffs and the defendant made a contract for the piano sued for, and if you further find that at that time the defendant was a married woman, and that she had no separate estate, then her contract would be void and plaintiffs cannot recover in this case. . . She can neither contract nor be contracted with during her marriage, and if during her coverture she become possessed of property in which she has no title, her possession by operation of law would become that of her husband; and for this reason plaintiffs cannot recover of defendant in this case." This the court refused to give, and, on the contrary, charged that a married woman is bound by her contracts whether she has a separate estate or not.

On this proposition there is great conflict or diversity of opinion among the courts of different States. But this conflict arises from the different phraseology of the statutes, no two of the acts being alike, and the court in each case having construed the act of the legislature of its own State. See Harris on Married Women, where the decisions of the different courts are collated. Our own statute upon the subject is somewhat different from that of any other State, and this is the first time that the question here made has come squarely before us. We must construe the act according to what we consider to be its true meaning and the legislative intent. The language of the act of 1866, as found in section 1764 of the code, is as follows : "All the property of the wife at the time of the marriage, whether real, personal or choses in action, shall be and remain the separate property of the wife ; and all property given to, inherited or acquired by the wife during coverture, shall vest in and belong to the wife and shall not be liable for the payment of any debt, default or contract of the husband." This act was in substance incorporated into the constitution of 1868 (art. 7, sec. 2), and also into

that of 1877 (Code, §5087).    It will be seen that it de-
clares that "all property given to, inherited or acquired
by the wife during coverture, shall vest in and belong
to the wife," etc.

It is clear from the terms of the act that all the prop-
erty the wife had at the time of her marriage and all
property given to or inherited by her thereafter, belongs
to her just as if she had never married; and we think
that, under the same statute, all that she may thereafter
*acquire* besides that which is given to or inherited by
her, belongs to her in like manner.    We think the in-
tention of the legislature and of the framers of the con-
stitution, in the use of the word "acquired," was to con-
fer upon the wife the same rights and privileges as to
acquiring property as she had before marriage.    The
law having thus given her the power to hold in her own
right property given to or inherited by her, free from
her husband and without the intervention of a trustee,
it gave her necessarily the power to contract and be
contracted with.    If she contracts and makes a profit,
the profit thus acquired belongs to her ; if she loses, the
loss falls upon her.    If the law deals thus generously
with wives who were so fortunate as to own property at
the time of marriage, or who have received or inherited
property since, why will it not so deal with all wives ?
Why should it exclude one who had nothing at the time
of her marriage, and who has since received and expects
nothing by way of gift or inheritance ?    Why should she
not be allowed to make a contract whereby she may ac-
quire property ?    Why may she not be allowed, espe-
cially if she has an improvident husband, to contract and
acquire property for the support of herself and her chil-
dren ?    In our opinion, there can be no doubt that if a
woman has property at the time of her marriage, or af-
terwards acquires it by gift or inheritance, she has all
the rights we have mentioned ; and we can see no good

reason to hold that the same rights were not conferred upon the wife who had nothing at her marriage and has acquired nothing by gift or inheritance since. The legislature, in our opinion, intended to put all wives upon the same footing in regard to contracts and acquiring property, and intended to allow them to make contracts whether they have separate estates or not, and to make these contracts binding whether executed or executory. A man can make a contract whether he has an estate or not. Why not allow a married woman to do the same? No one can possibly be injured. If she makes a contract, the other party can easily ascertain whether she has a separate estate or not; if she has none, the other party need not make the contract. If he does make it, he takes the risk just as he would if he were contracting with a man who had nothing. He takes the risk of being able to enforce it. While this court has not heretofore decided this question squarely, the trend of our decision since the act of 1866 has been in this direction. We think, therefore, that the court did not err in refusing the request and in charging as complained of in this ground of the motion.

2. The second ground of the amended motion complains that the court committed error in charging as follows: "If the plaintiffs sold the piano here sued for to the defendant, and retained the title in themselves until the notes given therefor were all paid, and if there yet remains any part of said purchase money unpaid after deducting from the price to be paid the amount paid by defendant, and the damage sustained by defendant by reason of any defect in said piano or failure of plaintiffs' warranty on said piano, you will find for plaintiffs the piano here sued for." This charge, under the pleadings and the evidence in this case, we think was erroneous. We presume the court was led into error by construing the contract between the par-

ties as a lease and not as a conditional sale. The note which the defendant paid and which, except as to date and amount, is identical with the others, each of them forming part of the same contract, contains the following stipulations:

"·$100.                    Early Co., Ga., August 4, 1888.

" I promise to pay J. Jordan & Co. or bearer one hundred dollars for value received, for the rent of their ' Opera Piano,' Style 3, No. 11540, at the office of John T. Davis & Son, Columbia, Ala., in the following instalments, to wit: One hundred dollars on the 1st day of October, 1888. The makers and sureties . . agree that if collected by an attorney by or without suit, the fees of such attorney shall be added and paid by the said makers and sureties and may be included in any judgment that may be rendered against them on said note. It is agreed and understood . . that the piano for the use of which this note is given, is and shall remain the property of J. Jordan & Co., and in default of payment the said piano shall be returned to them or their agent in good order, and they or their agent are authorized to take possession of the same without process of law. On payment of this note (given for the use of this piano), a bill of sale will be given and title of the same passed to the lessee; but until then the title to the piano shall remain in J. Jordan & Co. [Homestead, etc. waived.]

(Signed) Sudie Hays (Seal).·
" Attest: J. H. Simonton.
" Purchaser's P. O. Address: Cedar Springs, Ga.
" Recorded in Book C, Mortgages," etc.

The court below must have regarded the $100 paid by the defendant, under this note, as in the nature of rent for the use of the piano for the two months during which she had held it, and as lost to the defendant in the event of her failure to pay the remainder of the amount agreed upon. Although the contract does use the term " rent" and states that the notes are given for the " use" of the piano, we do not so construe it, but regard it, not as a lease or renting, but as a conditional

sale with title reserved in the vendor until the purchase price is paid. *Guilford, Wood & Co.* v. *McKinley*, 61 *Ga.* 232. The entire $350 styled "rent" is made payable within six months from the date of the transaction, and is the stipulated value of the piano and the consideration for a bill of sale to be given when the full amount is paid ; and the sale of the piano, and not the renting thereof, is evidently the real end and basis of the contract. The Supreme Court of the United States, in passing upon a similar contract, say : "Nor is the transaction changed by the agreement assuming the form of a lease. In determining the real character of a contract, courts will always look to its purpose, rather than to the name given it by the parties." *Hervey* v. *R. I.* Locomotive Works, 93 U. S. 672. Mr. Justice Davis, in the opinion, cites *Murch* v. *Wright*, 46 Ill. 487, s. c. 95 Am. Dec. 455, in which it was held, as to a contract of this character, "that it was a mere subterfuge to call the transaction a lease," and says : "It is true the instrument of conveyance purports to be a lease, and the sums stipulated to be paid are for rent; but this form was used to cover the real transaction, as much so as was the rent of the piano in *Murch* v. *Wright*. There the price of the piano was to be paid in thirteen months, and here, that of the engine, . . in one year. It was evidently not the intention that this large sum should be paid as rent for the mere use of the engine for one year. If so, why agree to sell and convey the full title on the payment of the last instalment? In both cases, the stipulated price of the property was to be paid in short instalments, and no words employed by the parties can have the effect of changing the true nature of the contracts." The courts now uniformly hold that such contracts are not leases, but are conditional sales. It was so held where parties expressly contracted that "no agreement of sale of said piano-

forte is implied." Gerow v. Castello, 11 Col. 560, s. c. 7 Am. State Rep. 260. See also Miller v. Steen, 30 Cal. 402, s. c. 89 Am. Dec. 455; Singer Mfg. Co. v. Cole, 4 Lea (Tenn.), 439, s. c. 40 Am. Rep. 20 ; Knittel v. Cushing, 57 Tex. 354, s. c. 44 Am. Rep. 598; Loomis v. Bragg, 50 Conn. 228, s. c. 47 Am. Rep. 638 ; Singer Mfg. Co. v. Graham, 8 Oreg. 17, s. c. 34 Am. Rep. 572 ; Lucas v. Campbell, 88 Ill. 447; Green v. Church, 13 Bush. (Ky.) 430; Gerrish v. Clark, 13 Atl. (N. H.) 870; Gorham v. Holden, 9 Atl. (Me.) 894 ; Curran v. Knapp, 117 Mass. 324 ; Carpenter v. Scott, 13 R. I. 477 ; Sage v. Sleutz, 23 O. St. 1; Singer Mfg. Co. v. Holcomb, 40 Iowa, 33 ; DeSt. Germain v. Wind, 13 Pac. (Washington), 753 ; Whitcomb v. Woodworth, 54. Vt. 544; Hintermeister v. Lane, 27 Hun (N. Y.), 497.

The contract being, then, a conditional sale and not a lease, and the payments made thereunder not rent but purchase money, the plaintiffs have no right to retain them as rent. And there is no express stipulation that they shall be treated as a forfeiture. "Forfeitures are abhorred in equity and are never favored in law," and provisions for forfeiture are regarded with disfavor and construed with strictness, when applied to contracts and the forfeiture relates to a matter admitting of compensation or restoration. Where adequate compensation can be made, the law in many cases and equity in all cases discharges the forfeiture upon such compensation being made. The law inclines to remedy breach of condition by damages rather than by forfeiture. Code, §2295; Story Eq. Jurisp. §§1312, 1314, 1316 et seq. " On sale reserving title till the price is paid, many of the cases hold that partial payments are forfeited on default of the residue; but in courts possessing equity powers, the modern tendency is to allow the seller who rescinds a contract for default after receiving part of the price, to retain only so much as will compensate

him." Newmark on Sales, §306; Preston *v.* Whitney, 23 Mich. 260, 267; Johnson *v.* Whittemore, 27 Mich. 463, 470. In this case, under the practice in this State, it was within the power of the court to mould the verdict so as to do full justice to the parties, and in the same manner as a decree in equity. Code, §§3562, 3082; Acts 1884–5, p. 36; Acts 1887, p. 64. Although the plaintiffs elected to take the piano and not to take a money verdict for damages, as they had a right to do, under section 3564 of the code, yet we do not think that they were entitled to recover the piano and retain all the money received from the defendant. We think that, under our law, the court should have instructed the jury to so mould their verdict as to do justice to all parties.; and should have instructed them that if the plaintiffs elected to take the specific property, and a part of the purchase money had been paid, the plaintiffs were entitled to recover the property itself, but before they could recover, they must return the money which the defendant had paid them, after deducting a proper amount for the use of the piano, if the use was of any value to the defendant; which amount the jury should arrive at from the evidence, finding· the balance, with interest, in favor of the defendant against the plaintiffs, the piano to be returned to the plaintiffs upon payment to the defendant of the amount thus found. Where the plaintiff obtains possession of the piano by bail process, as was done in this case, the court can enter judgment for the amount found for the defendant upon the plaintiff's bond.

The ruling here made is not in conflict with that in the case of *Guilford, Wood & Co.* v. *McKinley*, 61 *Ga.* 230. In that case the plaintiffs elected to take a money verdict for the damages, and not a verdict for the property. This court held that they could recover the bal- ance of the purchase money, after deducting what had

been paid, and damages for breach of warranty. When the court said, in the latter part of the opinion in that case, that "the plaintiffs had the right to recover *it* unless the balance of the price be paid," the court meant that the plaintiffs had the right to recover the balance of the purchase money after deducting what had been paid and after deducting damages arising from defects in the piano, because the court adds: "which payment may be in money or by showing that the piano was a faulty instrument and that the plaintiff had got all it was worth, owing to its defects." *Judgment reversed.*