JAMES T. WHITE & another *vs.* JAMES M. SOLOMON.

Suffolk.    November 23, 1894. — November 26, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract — Sale — Delivery — Evidence — Deposition — Signature.*

A. signed a contract by which he agreed, " in consideration of its delivery for me" at a specified express office, to pay B. $35 for an article bought of him, as follows : $10 " upon delivery at the express office," and the balance in monthly payments, and that, upon A.'s failure to make any of the stipulated payments, all of the instalments remaining unpaid should immediately become due and payable, and B. might take the article from A.'s possession.  The article was delivered as agreed at the express office.  A. refused to receive it, and the express company after a time left it at B.'s place of business in pursuance of a rule of the company and without B.'s assent, and it was held subject to A.'s order. There was no repudiation of the contract by A. before the delivery at the express office.  *Held*, in an action upon the contract, that the delivery at the express office fixed B.'s right to the price of the article ; and that he was entitled to recover that amount.  FIELD, C. J., ALLEN & MORTON, JJ., dissenting.

The deposition of a party to an action is not rendered inadmissible because he refused to answer a cross-interrogatory, if it appears to have been immaterial.

In an action upon a contract purporting to have been signed by the defendant, his answer to an interrogatory, " The signature resembles mine.  I wish to have the contract identified before answering further," coupled with the absence of any later denial, affords sufficient evidence of his signature.

HOLMES, J.    This is an action upon the following contract:
" White's Physiological Manikin.

" Place and date : 75 Court Street, Boston, Mass., June 7, 1889.
" Messrs. J. T. White & Co., Publishers, New York.

" Gentlemen : Please deliver according to shipping directions given below, one White's Physiological Manikin, Medical Edition, price $35.00.   In consideration of its delivery for me, freight prepaid, at the express office specified below, I promise to pay the sum of $35.00 as follows : $10.00 upon delivery at the express office, and the balance in monthly payments of $5.00, each payable on the first of each and every month thereafter, until the whole amount is paid, for which the publishers are authorized to draw when due.

" It is expressly hereby agreed that in case of the failure to pay any one of the said instalments after maturity thereof, all of

said instalments remaining unpaid shall immediately become due and payable, and the said James T. White & Co. may take or cause to be taken the said manikin from the possession of the said　　　　　or their representatives, to whom he may have delivered the same without recourse against said James T. White & Co. for any money paid on account thereof. It being expressly agreed that the money paid on account shall be for the use and wear of said manikin.

"Shipping directions to be filled out by the agent.

"To whom sent.　　J. M. Solomon.

75 Court Street.

Town, Boston.　　County of Suffolk.

State, Massachusetts.

"James M. Solomon,

75 Court Street.

Agent W. F. Byrd."

There was evidence, and we must assume the judge who tried the case to have found, that the manikin was delivered as agreed to the express company, freight prepaid, that the defendant refused to receive it, that in consequence the express company after a time left the manikin at the plaintiffs' place of business, in pursuance of a rule of the company and without the plaintiffs' assent, and that it is held subject to the defendant's order. There had been no repudiation of the contract by the defendant before the delivery of the manikin at the express office.

The main question is whether the judge who tried the case ought to have ruled that "the plaintiffs are not entitled to recover the price of the article in question, but must offer evidence to the court upon the question of damages for the alleged breach of said contract." A majority of the court are of opinion that this ruling properly was refused. We assume in favor of the defendant, but without deciding, that the title to the manikin did not pass by delivery at the express office, but that assumption does not dispose of the case. In an ordinary contract of sale the payment and the transfer of the goods are to be concurrent acts, and if the buyer refuses to accept the goods, even wrongfully, he cannot be sued for the price, because the event on which he undertook to pay the price has not happened; and although the fact that it has not happened is due to his own wrong, still he

has not promised to pay the price in the present situation, but must be sued for his breach of contract in preventing the event on which the price would be due from coming to pass. The damages for such a breach necessarily would be diminished by the fact that the vendor still had the title to the goods. But in the case at bar the buyer has said in terms, that although the title does not pass by the delivery to the express company, if it does not, delivery shall be the whole consideration for an immediate debt (partly *solvendum in futuro*) of the whole value of the manikin, and that the passing of the title shall come as a future advantage to him when he has paid the whole. The words " in consideration of its delivery " are not accidental or insignificant. The contract is carefully drawn, so far as to make clear that the vendors intend to reserve unusual advantages and to impose unusual burdens. We are not to construe equities into the contract, but to carry it out as the parties were content to make it. If a man is willing to contract that he shall be liable for the whole value of a chattel before the title passes, there is nothing to prevent his doing so, and thereby binding himself to pay the whole sum. See the observations of Blackburn, J., in *Martineau* v. *Kitching*, L. R. 7 Q. B. 436, 455. Benjamin, Sales, (4th ed.) 716, 717. When, as here, all the conditions have been complied with the performance of which by the terms of the contract entitles the vendors to the whole sum, if the vendors afterwards have not either broken the contract or done any act diminishing the rights given them in express words, the buyer cannot by an act of his own repudiating the title gain a right of recoupment, or otherwise diminish his obligation to pay the whole sum which he has promised. See *Smith* v. *Bergengren*, 153 Mass. 236, 238.

If the first payment of ten dollars upon delivery were to be made upon delivery to the buyer, it well may be that, if the buyer refused to accept the manikin or to pay the ten dollars, the sellers' only remedy would be for a breach, and that they could not leave the manikin at his house and waive the payment against his will, with the result of making the whole sum due. But here the delivery is to be to an express company and the provision for payment of ten dollars " upon delivery at the express office " must mean after the delivery, so that the delivery is the

first act, and by itself without more fixes the rights of the vendors to the price, just as the transfer of the stock did in *Thompson* v. *Alger*, 12 Met. 428, 444. Our decision is in accord with the following cases; we know of no decisions to the contrary. *Marvin Safe Co.* v. *Emanuel*, 21 Abb. N. C. 181. *Brewer* v. *Ford*, 54 Hun, 116, 120; *S. C.* 59 Hun, 17, 19; 126 N. Y. 643. *Carnahan* v. *Hughes*, 108 Ind. 225. See further *Burnley* v. *Tufts*, 66 Miss. 48; *Tufts* v. *Griffin*, 107 N. C. 47; but compare *Tufts* v. *Grewer*, 83 Maine, 407; *Swallow* v. *Emery*, 111 Mass. 355, 357.

Two remaining exceptions may be disposed of in a few words. It is objected that a deposition of one of the plaintiffs was not admissible because he refused to answer a cross-interrogatory. The cross-interrogatory was whether or not one Byrd had made other sales than the contract in suit for the plaintiffs. It does not appear to have been material. Therefore the deposition properly was admitted. We need not consider whether, if the question had been material, the deposition ought to have been excluded unless before the trial the defect had been brought to the attention of the court that it might pass such order on the subject as should seem proper.

It was objected that there was no evidence of the defendant's signature. But the defendant's answer to an interrogatory, " The signature resembles mine. I wish to have the contract identified before answering further," coupled with the absence of any later denial, was enough.　　　*Exceptions overruled.*

FIELD, C. J. It is not easy, perhaps, to reconcile all our decisions upon the measure of damages ·in actions for goods bargained and sold or for goods sold and delivered, but the general rule is, I think, that where the title passes to the vendee by the contract, and the contract has been executed by a delivery or by what is equivalent to a delivery, the vendee is liable to the vendor for the price; but where the title does not pass to the vendee by the contract, and he declines to receive and accept the goods sold, the damages are the injury suffered from the breach, which usually is the difference between the price agreed upon and the market value of the goods at the time and place of delivery. *Collins* v. *Delaporte*, 115 Mass. 159. *Whitney* v.

*Thacher,* 117 Mass. 523. *Schramm* v. *Boston Sugar Refining Co.* 146 Mass. 211. *Tufts* v. *Bennett,* 163 Mass. 398. *Laird* v. *Pim,* 7 M. & W. 474, 478.

This question, in a contract for the sale of stock in a corporation, was considered in *Thompson* v. *Alger,* 12 Met. 428, 443. In that case the court held that the plaintiff was entitled to recover as damages the price agreed to be paid, and say: " The argument against such recovery is, that this stock was never accepted by the defendant; that this, at most, was a mere contract to purchase; and that the defendant, having repudiated it, is only liable to pay the difference between the agreed price and the market value of the stock on the day of the delivery. Such would be the general rule as to contracts for the sale of personal property; and such rule would do entire justice to the vendor. He would retain the property as fully in his hands as before, and a payment of the difference between the market price and that stipulated would fully indemnify him. Such would have been the rule in this case, if nothing had been done to change the relation of the parties. If, for instance, the defendant had repudiated the contract before any transfer of stock to him had been made on the books of the corporation, it might properly have applied here. But this is a case of somewhat peculiar character in this respect. The contract of the vendor to sell to the defendant one hundred and eighty shares of railroad stock required a previous transfer of the shares on the books of the corporation. This, from the very nature of the case, was a previous act; and when done, it passed the property on the books of the company to the defendant. This was done by the vendor as early as October 14th, 1841, in respect to all the shares stipulated to be sold. At this time, the defendant had not repudiated the contract. . . . In this state of the case, as it seems to us, the true rule of damages is the contract price. The stock has been transferred to Alger on the books of the corporation, and the vendor, having done this, in the proper execution of the contract, and before it was repudiated by the defendant, may well insist upon this rule as the measure of damages."

This rule of damages has been applied in this Commonwealth to contracts for the sale of stock in corporations, where the vendor has before trial duly tendered the stock or offered to trans-

fer it, and has renewed the tender or offer in court at the trial. *Thorndike* v. *Locke*, 98 Mass. 340. *Pearson* v. *Mason*, 120 Mass. 53. See *Nichols* v. *Morse*, 100 Mass. 523; *Frazier* v. *Simmons*, 139 Mass. 531.

If the contract in this case could be considered as an absolute contract of sale, it may be that the court could have found from the evidence such a delivery as in accordance with our decisions might be held to pass the title as between the parties. But then it might be necessary to consider whether, if the manikin was of value, it would not be necessary for the plaintiffs to keep the delivery good in some manner, as by storing it for the defendant at or near the place of delivery, or by tendering it to him at the trial in order to enable the plaintiffs to recover the entire price. If the manikin had been sent by the plaintiffs from a distant foreign country, and on the defendant's refusing to receive it had been sent back to them with their assent, and retained by them there, it would seem more reasonable to permit the plaintiffs to recover their damages caused by the defendant's refusal than to recover the entire price agreed to be paid, and to leave to the defendant only the chance of obtaining possession of the manikin in such manner as he could. If, on the vendee's refusing to receive the property bought, it is resold by the vendor by public auction, after notice to the vendee, the damages recovered are, of course, the difference between the price agreed to be paid and the sum obtained by the vendor from the resale, if reasonable care is taken to obtain for the property all that it is worth.

It becomes necessary in the present case to consider the nature of the contract. The contract, I think, is in effect a contract for a conditional sale, and the intention is that the title shall not vest in the defendant until the price is paid. If the price is not paid according to the terms of the contract, the plaintiffs are authorized to retake the manikin without being accountable to the defendant for any of the money paid by him on account of the price. If the plaintiffs exercise this right of retaking the manikin into their possession because the price is not paid, they have both the title and the possession, because they have never parted with the title. What, then, is the rule of damages under such a conditional contract of sale, when the vendee refuses to receive the article and it is returned to and retained by the vendor? I

think that the construction to be given to the contract is, that, if the defendant does not pay the price according to the contract, the plaintiffs may retake the manikin from the possession of the defendant and retain what he has paid on account of the price, or they may leave the manikin in the possession of the defendant and sue him for the instalments of the price which remain unpaid, but the plaintiffs cannot collect the whole price and also retake the manikin ; they cannot hold the title to the property and also recover the price of it.

But it is said that the plaintiffs have not retaken the manikin. The manikin has been returned to the plaintiffs, and is retained by them subject, as they say, to the order of the defendant. It is retained in New York City, and by retaining it there I think it must be held that the express company returned it to them with their assent, and that the plaintiffs have ratified this action of the express company.

The damages to be recovered when a vendee, in a conditional contract of sale, refuses to receive the property, and it is returned to the vendor by his assent and is retained by him, seem to me analogous to the damages to be recovered when a vendee in an executory contract of sale refuses to receive the property. *Morse* v. *Sherman,* 106 Mass. 430, 434. *Tufts* v. *Bennett, ubi supra.* See *Tufts* v. *Grewer,* 83 Maine, 407. The title in each case remains in the vendor, and the damages, when the thing sold is a commodity usually bought and sold in the market, are generally the difference between the price agreed to be paid and the market value of the property at the time and place of delivery. In my opinion, such should be the rule in this case. I find nothing in the agreement which distinguishes the present case from the ordinary one where the vendee of property agrees to pay a part of the price on delivery, and the remainder of the price in instalments after delivery.

Justices ALLEN and MORTON concur in this opinion.

*J. E. Kelley,* for the defendant.

*G. H. Ryther,* for the plaintiffs.