EDNA MOHLER, Appellant, v. GUEST PIANO COMPANY, Appellee.

**SALES:** Conditional Sales—Recovery of Payments—Allowance for
1   Use and Depreciation—Pleading. Even if a buyer of a piano under a conditional sale contract, upon the seller's retaking possession for default in payments, would be entitled to the return of such payments, he cannot recover such payments without deducting reasonable allowance for the use and depreciation of the piano.

EVANS and PRESTON, JJ., dissent.

**PLEADING:** Demurrer—Determination—Cannot Aid Pleading. The
2   court is obliged to either overrule or sustain *in toto* a demurrer to the petition as the pleader has seen fit to frame it, and cannot add to or take anything from it, in aid of the ruling. In a suit at law by the buyer of a piano, under a conditional sale contract, to recover payments made, on a demurrer to the petition on the ground of failure to take notice of reduction for the use and depreciation of the piano, the court can only sustain the demurrer, as it cannot add to the petition a tender to do equity.

EVANS and PRESTON, JJ., dissent.

SALES: Conditional Sales—Recovery of Payments—Allowance for Use and Depreciation—Pleading—No Necessity for Counterclaim. In an action by the buyer for the recovery of payments made upon a piano which has been retaken by the seller, the seller is not required to plead the use and depreciation of the piano by way of set-off or counterclaim, as the buyer is required to plead the amount of her unpaid demand *after* taking into consideration such use and depreciation.

EVANS and PRESTON, JJ., dissent.

PLEADING: Demurrer—Conclusion of Law—Non-Rescission of Contract. Whether the retaking by the seller of a piano, which had been sold on payments, with title remaining in seller, for default of payments, was a rescission of the contract, was a question of law, and a demurrer to a petition for the recovery of payments made thereunder did not admit the conclusion in the petition that, under the law, the facts alleged in the petition worked a rescission.

SALES: Conditional Sales—Retaking Possession—Non-Rescission. The retaking of a piano, where the contract for its conditional sale authorizes a taking of possession on default in payments, does not work a rescission of the contract so as to require restoration by the seller of payments already made by the buyer, but is a proceeding under and in affirmance of the contract.

SALES: Conditional Sales—Retaking Possession—Seller Can Retain Payments Made. Regardless of any forfeiture clause in a conditional sale contract under which the seller retains title to property, with right to retake it on default of the buyer, the seller may, where the buyer is wholly at fault, retake such property without rescission, and without repaying any partial payments received by him.

SALES: Conditional Sales—Retaking—Right to Possession by Seller. That a seller makes claim to be the absolute owner of a piano which he has retaken from the buyer under a conditional sale contract providing for such retaking in case of default in payments, and providing that title shall remain in the seller, only adds possession to the title, and does not give the buyer the right to recover the payments he has made.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

MAY 15, 1919.

THE parties contracted that the Piano Company should retain title to a piano delivered to appellant, Mohler; that the instrument should be paid for in partial payments; and that, on default in such payments, the company might repossess itself of the instrument. Payments were defaulted, and possession accordingly taken. In this suit, appellant sought to recover all the payments she had made before the instrument was retaken. Demurrer to her petition was sustained, and she appeals.—*Affirmed.*

*Keithley & Bump,* for appellant.

*Henry & Henry,* for appellee.

SALINGER, J.—I. As a supersession to the contract originally made, the parties made a second one. The price was $325. The first contract was made on April 15, 1909; the second on April 28, 1911. At the time the second one was made, the payments then made amounted to about $116.26. The second contract took no account of part of this payment made. The total payments, including said $116.26, aggregate $277.25. Counting time of possession most favorably to appellant, by starting in from the time the second contract was made, and she had possession of the instrument from April 28, 1911, to the time at which the company retook the instrument—something like four years and a half. It is not strained to assume that, in addition to losing the use of this instrument for that time, the company suffered some loss by the depreciation occurring during that time. The petition to which the demurrer was sustained does not, in terms, refer to use and depreciation, makes no tender on their account, and demands repayment of every dollar plaintiff has paid on the contract, to wit, $277.25. One ground of the demurrer is that "the retaking of the possession of the said piano by means of a writ of replevin at a time when payments attached to plaintiff's

petition were in default, does not entitle plaintiff to a recovery of the sums already paid on the purchase price."

Let us concede, for present purposes, that the petition of the plaintiff entitled her to a repayment of *part* of the sums she had paid. Is her petition demurrable because she demanded repayment of *all* she had paid?

1. SALES: conditional sales: recovery of payments: allowance for use and depreciation: pleading.

Concede, for the sake of present argument, that the vendor may not have both the property and the payments. May the vendee have the use of the property, return it in a depreciated condition, and then recover all that she has paid? Appellant concedes in her argument here that something was due the company for use and depreciation. Every case cited by her and the many more we have examined all agree that, even if repayment is due, it is the sum remaining after deducting a reasonable allowance for use and depreciation. See *Quality Clothes Shop v. Keeney*, 57 Ind. App. 500 (106 N. E. 541); *Raymond Co. v. Kahn*, 124 Minn. 426 (145 N. W. 164); *Latham v. Sumner*, 89 Ill. 233, at 234; *Rayfield v. Van Meter*, 120 Cal. 416 (52 Pac. 666); *Preston v. Whitney*, 23 Mich. 260, at 266. All these cases hold that permitting a recovery without such deduction would permit the defaulter to profit by his default. The amount that may be recovered is the one due after fair deduction for use. *Hill v. Townsend*, 69 Ala. 286; *Pierce v. Staub*, 78 Conn. 459 (62 Atl. 760). The party in default must make tender by way of credit of what is a proper reduction for use and depreciation. *Hays v. Jordan & Co.*, 85 Ga. 741 (11 S. E. 833); *National C. R. Co. v. Cervone*, 76 Ohio St. 12 (80 N. E. 1033); *Hamilton v. Singer Mfg. Co.*, 54 Ill. 370; *Commercial Pub. Co. v. Campbell, etc., Co.*, 111 Ga. 388 (36 S. E. 756). If the vendee may recover, it is payments made, less the "damages sustained" by the vendor. *Quality Clothes Shop v. Keeney*, 57 Ind. App. 500 (106 N. E. 541). In *Hays v. Jordan*, 85 Ga. 741

(11 S. E. 833), it is held that, where the equity jurisdiction is exercised, the vendor may retain only so much as will compensate him.  In argument here, appellant concedes that, at all events, not more is owing than the payments she has made "less whatever damages or depreciation of the piano."  And she concedes that the true rule is to allow the vendee to recover the payments made, less reasonable compensation to the vendor for the use of the property and damages thereto.  We have said that the contract makes no reference in terms, to use and depreciation.  But, as seen, the law does take these elements into consideration in a suit to recover the payments made.  That law is part of the contract, and thus supplies the omission to write these elements into the contract.  The case on demurrer, then, stands precisely thus: The petition declares that a certain sum has been paid; that an allowance for use and depreciation should be deducted from that sum; it makes no tender of that reduction; it makes no statement of how much should be allowed, and thereupon demands judgment for the payments made, without any deduction for use and depreciation.  Why is it not true that the facts pleaded do not entitle the plaintiff to the relief demanded?  The court was obliged to either overrule or sustain the demurrer *in toto,* and to do this on the petition as the pleader had seen fit to frame it.  The court could add nothing to nor take anything from the pleading, in aid of the ruling on the demurrer interposed to the pleading.  It found a petition which not only confessedly demanded more than was due, but left in darkness how much more than was due was being claimed.  The petition contented itself with stating that the total of the payments was a certain sum; that some reduction was due for use and depreciation; and that judgment should be given for the total of the payments made.

2. PLEADING: demurrer: determination: cannot aid pleading.

In *Case & Co. v. Illinois Cent. R. Co.*, 184 Iowa 98, a claim for $368.70 was made. The defendant urged, *as a complete defense,* that a judgment in garnishment had ordered it to pay part of this amount to someone other than the claimant. We held that this answer was demurrable because it did not constitute *a complete defense;* that defendant framed its own defense, and the court could not reframe it, and, on demurrer's being interposed, was bound to pass upon the plea as defendant had tendered it; that, though the partial sequestration by the garnishment judgment gave the defendant some rights, it was not the right to have the plaintiff go hence without any recovery; that certainly plaintiff was entitled to recover so much of the sum claimed as the garnishment judgment did not profess to touch; that, hence, a plea of that judgment as a complete defense was demurrable, because it was no such defense; that the only question tendered by the demurrer was whether the judgment should defeat the claim of the plaintiff in its entirety; and that, by sustaining the demurrer, the court ruled rightly that defendant was not entitled to the relief it sought.

The sole answer of the appellant is that the petition is not demurrable for having failed to take notice of any reduction for use and depreciation, because the vendor had the right to plead these "as an offset or in a counterclaim to this suit;" and that it was then for the jury to determine what should be allowed for use and depreciation. It is true that, in a suit on the equity side, the chancellor may mould a decree which allows a recovery of payments made, by deducting from the allowance made such sum as is found to be due for use and depreciation. It is true that, in *Hays v. Jordan*, 85 Ga. 741 (11 S. E. 833), such reduction was effectuated by a verdict, but also true that this was done on an express statute allowing so moulding the verdict, on the law side. But all this cannot avail here. We have no

such statute, and this suit is on the law side. There, and especially on demurrer, the court may not add to the petition a tender to do equity. See *Whelan v. Couch,* 26 Grant Chancery (Ont.) 74.

There is no force in the claim that this demurrer should have been overruled because the defendant had the power to meet the petition with a counterclaim or set-off asserting damages from use and depreciation.

**3. SALES: conditional sales: recovery of payments: allowance for use and depreciation: pleading: no necessity for counterclaim.** The demurrer being overruled, the overruling would settle, as the law of the case, that plaintiff could have judgment for the full amount claimed, without reduction for use and depreciation. Suppose the company had made default by failing to answer over, after its demurrer had been overruled. On the ruling made, the court was bound to give judgment for the plaintiff for the total of the payments she had made, upon proof of nothing save how much she had paid, and that the vendor had repossessed himself of the instrument. In the eyes of the law, the petition declared that a stated sum had been paid, that a reduction in an undisclosed amount was due for use and depreciation, and that the vendor had retaken the property. On overruling the demurrer, and entering default by the seller, the court was bound to give judgment for more than was due and owing.

Again, the petition was a declaration that repayment was due upon implied contract, and that some of the contract obligation had been paid by use and depreciation. And as it was not stated how much had been paid, there was consequently no allegation that the contract obligation was unpaid. For all that appeared, had the amount of use and depreciation been alleged, it might have been an amount sufficient to equal the payments that had been made. Now, therefore, it was not the duty of the company to plead use and depreciation by way of set-off or

counterclaim, because it was the duty of the plaintiff to plead that its demand was unpaid. We defeated the plaintiff in *Baldwin & Co. v. Moser*, 155 Iowa 410, at 413, because he adduced no evidence that his claim was unpaid, or, if anything was shown to be due and unpaid, because he had no proof "of the amount or balance for which recovery should be had;" that the burden to show "that something is due and the amount thereof is on the plaintiff; and that, failing so to do, there can be no recovery, even though the defendant has alleged payment of the claim."

II.   If the failure to allege how much was due be waived, we are still of opinion that the demurrer was rightly sustained. The careful consideration we have given to the position of appellant leads us to believe that it is this: By retaking possession of the piano, the appellee worked a rescission of the contract between the parties, and therefore the plaintiff may recover the payments, on the reasoning that the other party to the contract, having rescinded the same, was bound to restore the *status quo,* and that this could be effected only by repaying to plaintiff all the payments she had made. It might be answered that it would be more than restoring the status of the parties to give the plaintiff all she had paid, without compensating the other party for having lost the use of the property for four and one half years, and for receiving, in place of a new instrument, one that had been used for that length of time. But passing that, the position of the plaintiff cannot be sustained on the law of rescission, because the retaking of this piano did not constitute a rescission of the contract. We do not overlook that the petition does allege that the vendor had rescinded the contract. All the facts upon which this statement is based appear in the petition. Whether they work a rescission is a question of law for the court, upon the facts alleged, and the demurrer

4. PLEADING: demurrer: conclusion of law: non-rescission of contract.

does not admit the conclusion in the petition that, under the law, the facts alleged in the petition work a rescission.

### 2-a

The appellant does have cases which hold that plaintiff was entitled to recover the payments made. But they do this on the reasoning that the vendor had rescinded. The case of *Quality Clothes Shop v. Keeney* is illustrative and typical. Some support is given it in *Shafer v. Russell*, 28 Utah 444, at 454, and by some cases in North Carolina, and possibly in Georgia. But the main support comes from the decisions in Indiana. See *Barber v. Lyon*, 8 Black. (Ind.) 215; *Patterson v. Coats*, 8 Black. (Ind.) 500; *Harris v. Bradley*, 9 Ind. 166; *Gilbreth v. Grewell*, 13 Ind. 484; *Fowler v. Johnson*, 19 Ind. 207, 209; and *Reeves & Co. r. Miller*, (Ind.) 91 N. E. 812, which hold that, if the seller retakes his property on default in payment, he rescinds the sale, and cannot recover the price. In many of these, either mutual fault or mutual rescission appears, which would make them inapplicable, if their soundness were conceded. Appellant relies, too, upon a statement in Williston on Sales, to the effect that it would be salutary and equitable if the courts would apply to cases of this kind the rules on which conditional sales are, in equity, held to be mortgages. The difficulty is that it is the overwhelming weight of authority that, where the contract authorizes a taking of possession on default in payment, such taking does not work a rescission of the contract. See *Haynes v. Hart*, 42 Barb. (N. Y.) 58 (because vendee is in fault). Such taking merely ends the contract, and is a compliance with the contract. *Richards v. Hellen*, 153 Iowa 66, at 72; *Haynes v. Temple*, 198 Mass. 372 (84 N. E. 467); *Latham v. Sumner*, 89 Ill. 233, at 234; *Singer Mfg. Co. v. Treadway*, 4 Ill. App. 57, at 59; *West v. Bolton*, 4 Vt. 558; *Fairbanks v. Malloy*, 16 Ill. App. 277;

5. SALES: conditional sales: retaking possession: non-rescission.

*Duke v. Shackleford,* 56 Miss. 552; *Hansbrough v. Peck,* 72 U. S. 497; *Tufts v. D'Arcambal,* 85 Mich. 185 (48 N. W. 497); and *Rayfield v. Van Meter,* 120 Cal. 416 (52 Pac. 666), which holds there is in such contract taking no necessity to rescind—nothing that plaintiff needs to rescind. And see *Lorain Steel Co. v. Norfolk & B. St. R. Co.,* 187 Mass. 500 (73 N. E. 646). We do not agree that the holding of *Lorain's* case is dictum. It can scarcely be that, because it had to pass directly on the effect of a taking in replevin, and declared:

"If such right of possession had been asserted, and the property retaken without suit, the vendee under a contract like this would have no cause of action to recover back money already paid."

Nor do we agree that the rule of the case is not in point. We see no force in the criticism by appellant that, because *Rayfield's* case is a replevin action, its said holding is inapplicable "under our statute." There is no reason why it might not be properly decided in replevin whether the contract of plaintiff had been rescinded, for that question might bear on his right to the possession. In *Raymond Co. v. Kahn,* 124 Minn. 426 (145 N. W. 164), it is held that such taking is not a rescission of the contract, but an acting under the contract, and that, therefore, "the rule requiring one to rescind a contract to put the other *in statu quo* should not apply." The reasoning in *Haynes v. Hart,* 42 Barb. 58, is that, where the vendor resumes possession on default in payment, and on a contract giving him authority to do so, there is no rescission, in the sense that requires one to put another *in statu quo,* but there is a termination of the contractual relation.

While (as both parties concede) our own cases have not directly settled some of the questions at bar, it seems to us it is settled in this jurisdiction that such a retaking does not work a rescission, and that, hence, cases in other

jurisdictions which hold the contrary cannot rule. We think that *Richards v. Hellen,* 153 Iowa 66, determines (whatever else it leaves unsettled) that taking possession on default in payment, and under a contract authorizing the taking of such possession, is not a rescission of the contract, but proceeding under and in affirmance of the contract; that the decision goes beyond mere intimation; and that it was not a pronouncement which could not competently be made in a replevin suit.

2-b

As is not unusual, the way to the vitals of the decision is filled with some unnecessary obstructions. That the vendor may retake under the contract without refunding or tendering a refund of the payments he has received (*Duke v. Shackleford,* 56 Miss. 552, *Fairbanks v. Malloy,* 16 Ill. App. 277) does not necessarily settle there may be no recovery of such payments. Numerous cases in which the vendor was permitted to retain all payments made by him involved contracts which expressly provided for such retention. Of course, such decisions are inapplicable here. That repayment was denied because there was an express contract to forfeit what had been paid cannot aid appellee, who has no such agreement. On the other hand, that repayment was denied where there was a contract providing that all payments made should be retained, does not prove that there must be a repayment *unless* there is a contract that payments made may be retained. What appellee, then, has to meet is the cases which hold that payments made may not be retained, in the absence of an express agreement authorizing their retention. Cases so holding have already been considered.

> 6. SALES: conditional sales: retaking possession: seller can retain payments made.

III.    Little importance has been attached to the presence of an express agreement that payments made should be forfeited when it was clear that the vendee was wholly in

fault. In case of a conditional sale of goods, where the condition is not performed by the vendee, the vendor may establish his property in the goods without rescission, and without repaying a partial payment made by the vendee. *Marston v. Baldwin,* 17 Mass. 605, 606; *Dwinel v. Howard,* 30 Me. 258; *Green v. Green,* 9 Cowen (N. Y.) 46; *Haynes v. Hart,* 42 Barb. 58; *Raymond Co. v. Kahn,* 124 Minn. 426 (145 N. W. 164) ; *Freeth v. Burr,* L. R. 9 C. P. 208; *Hansbrough v. Peck,* 5 Wall. 497; *Rayfield v. Van Meter,* 120 Cal. 416 (52 Pac. 666) ; *Herzog v. Purdy,* 119 Cal. 99 (51 Pac. 27, at 29) ; *White v. Solomon,* 164 Mass. 516; *Blake v. Hedges,* 14 Ind. 566. In *Battle v. Rochester City Bank,* 5 Barb. (N. Y.) 414, at 421, the reasoning is that, to allow one whose default in making further payments is unexcused to recover back the money he has paid, would be little short of offering a bounty for the violation of contracts. In *Ketchum v. Evertson,* 13 Johns. (N. Y.) 358, it is declared it would be an alarming doctrine that the plaintiff might violate a contract, and, because he choose to do so, make his own infraction of the agreement the basis of an action for money had and received; and that, if such an one may so recover, then so may "every man who makes a bad bargain and has advanced money upon it." In *Rayfield v. Van Meter,* 120 Cal. 416 (52 Pac. 666), it was said:

"A buyer who, without lawful excuse, refuses to go forward with his contract, is not entitled to recover back money paid on account thereof. * * * It seems to us that there is little equity and certainly no sound policy in allowing a buyer under such circumstances to be, at pleasure, quit of his contract, with no other liability than such as the law would have implied had there been no contract of sale at all."

And Tiedeman on Sales, Par. 219, *Parsons v. Smilie,* 97 Cal. 647 (32 Pac. 702), *Hicks v. Lovell,* 64 Cal. 14 (27 Pac. 942), and *Thirlby v. Rainbow,* 93 Mich. 164 (53 N. W.

159), are cited in support. Upon this reasoning, subrules have been builded up. In *Haviland v. Johnson,* 7 Daly (N. Y.) 297, at 301, there was a clause that payments made should be forfeit. But the existence of that provision does not affect the decision. The provision is disregarded; for the decision is that, where the vendee is in default, the payments may be retained without the aid of a forfeiture clause; that an agreement forfeiting payments made by the one party in fault is to be implied. It has been held, too, that, to warrant a recovery of payments made, there must be an agreement to refund; that, else, an inducement would be offered to a purchaser "to violate his agreement." *Haynes v. Hart,* 42 Barb. (N. Y.) 58; *Latham v. Sumner,* 89 Ill. 233, at 234; *Fairbanks v. Malloy,* 16 Ill. App. 277. To like effect is *Tufts v. D'Arcambal,* 85 Mich. 185 (48 N. W. 497).

### 3-a

One attempted avoidance seems to be that *Haynes v. Hart,* 42 Barb. (N. Y.) 58, has been overruled by statute and superseded by *Roach v. Curtis,* 191 N. Y. 387. It is further pointed out that the rule contended for by appellee has been made nugatory in New York, Ohio, Tennessee, Vermont, and Massachusetts, by statute enactment. The avoidance destroys itself. The *Roach* case, in superseding the *Haynes* case, but obeys the mandate of the New York legislature. And some decisions in other states do no more than abrogate in those states the rule applied in this case by the trial court, because, and merely because, the legislature has so decreed. The enactment of such statutes is, as much as anything, a legislative concession that, without such statutes, the rule would be the one under which the demurrer here was sustained.

For *Findley v. Koch,* 126 Iowa 131, appellant claims that therein this court recognized the right to recover payments made upon a contract which the vendor has rescind-

ed unless there be a forfeiture clause. We do not so read it. The decision is that, where the purchaser of land is in default, he may have neither specific performance nor recover the earnest money paid by him. This being disposed of, and the only question in the case decided, some response was attempted to the claim that, even if the earnest money might not be recovered in the *Findley* case as made, there was a right to obtain relief somewhere, and we said that we did not feel called upon to discuss whether, in any event, the party in fault could recover the money paid by him; that, if there is any such right of recovery, it is subject to counterclaim for damages proximately resulting from the breach of contract. We conclude with the statement that these questions are not for determination in the suit before the court, and that, if relief to the party in fault be available under any circumstances, it is to be secured in an action sounding in quasi contract. We feel sure that the *Findley* case rules no part of the controversy at bar. The case of *Reiger v. Turley*, 151 Iowa 491, at 502, correctly defines the scope of the *Findley* case. Beyond that, it is a case where the rescission, if one was had, was by mutual agreement and consent, while the parties still stood in equal right, and before plaintiff had lost or forfeited any of his contract rights. Whereupon, it is rightly held that defendant was both legally and equitably bound to restore to plaintiff the money received, and that it was proper to make the payment of that money a condition of a decree quieting the title of the defendant against the claims of plaintiff under the contract of purchase. It is manifest the *Reiger* case avails neither party to the suit before us. Of course, the payments made may not be forfeited to the vendor where both parties are in fault, or if there be a mutual rescission. In such case is found application for the assertion by appellant that the vendor may not keep both the goods and the payments already made. See *Fruits v.*

*Pearson,* 25 Ind. App. 235; *Battle v. Rochester City Bank,*
5 Barb. (N. Y.) 414, at 421. The case of *Richards v. Hellen,*
153 Iowa 66, 67, has some such intimation as is found in
*Findley's* case, supra.

IV. The petition alleges, not only the naked legal con-
clusion that what was done worked a rescission, but bases
the claim to repayment on the further alleged fact that the
company makes claim to be the absolute
owner of the piano. It did make such claim
in its replevin petition, and that fact ap-
pears in the petition in the instant case.
So the demurrer admits that the company
is making such claim. What is the effect of that admis-
sion? The action by which repossession was worked adds
possession to the title which the contract has reserved to
the vendor. *Duke v. Shackleford,* 56 Miss. 552. *Tufts v.
D'Arcambal,* 85 Mich. 185 (48 N. W. 497), so holds. But
there is injected a statement quite unnecessary to the de-
cision: that such rule does no harm because defendant has
the right, upon payment of the defaulted payments, to have
the property returned, after its taking has added posses-
sion to the title reserved in the contract. It is not said
how long a time the defaulter has wherein to make such
payment. If that were to be held, an anomalous condition
would arise. In a contract such as the one before us, the
title remains in the vendor until all contract payments are
made. *Haviland v. Johnson,* 7 Daly (N. Y.) 297, at 301.
This being so, the title is necessarily there at the time when
there is default in the payments, and the vendor, on au-
thority of the contract, takes possession on that account.
Such taking adds possession to that title. *White v. Solo-
mon,* 164 Mass. 516; *Duke v. Shackleford,* 56 Miss. 552. Up-
on these premises, it is said, in the *Haviland* case, supra,
that, if one who retains the title all of the time, because his
contract so provides, and takes possession because the con-

7. SALES: con-
ditional sales:
retaking:
right to pos-
session by
seller.

tract authorizes him to, is still liable to repay what has been received, the contract title, completed by or added to by possession, would little change the situation between the parties. We have to say this is manifestly so. For, if asserting a title which the contract gives the vendor, and taking possession authorized by the contract, still leaves it open to the defaulting vendee to recover the payments made, the only thing that having full title coupled with possession would accomplish would be a permit to such owner to retain the property until such time when, if ever, it should please the defaulter to make the defaulted payments. Coupled with the permission thus to retain the property, would be a command that the "owner" should not dispose of the property to a third person. He would be "full owner," except that he would have no right to dispose of what he "owned," because, in effect, the party in fault for breaking his contract—the contract which is the only thing that gave him any rights—can compel this owner to hold the property at the pleasure of the defaulter. As said in *Ketchum v. Evertson,* 13 Johns. (N. Y.) 359, 365:

"To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiff."

In our opinion, the ruling and judgment of the trial court must be—*Affirmed.*

LADD, C. J., WEAVER and STEVENS, JJ., concur.

EVANS and PRESTON, JJ., concur except as to Division I of the opinion.