No. 20.—ALFRED C. BOSTWICK, Administrator of JAMES BRIGHT, deceased, plaintiff in error, *vs.* PERKINS, HOPKINS and WHITE, defendants in error.

*Equity* cannot relieve an administrator after two judgments *de bonis testatoris* and *de bonis propriis* have been successively recovered against him *at law.*

This was a Bill in Equity, filed at the instance of the plaintiff in error against the defendants in error, in the Superior Court of the County of Pulaski, to which a general demurrer, alleging an entire want of equity in the bill, was interposed in behalf of the defendants in error ; which came on to be heard, before Judge SCARBOROUGH, in said Superior Court, at April Term, 1846. After argument had thereon, the court below sustained the demurrer, and dismissed the bill.

The facts of the case, as alleged by the plaintiff in error, in said bill, and the errors assigned in the decision of the court below, being fully set forth in the opinion of the court, delivered by his Honor, Judge LUMPKIN, it is deemed unnecessary to state them here.

ROCKWELL and KENAN, and C. B. COLE, for plaintiff in error.

IVERSON L. HARRIS and ELI WARREN, for defendants in error.

HARRIS, for defendants in error, contended :—

1st. The bill shows no such accident as is relievable in Equity. The eloignment of the negroes from Georgia—from the custody of the persons to whom they had been hired—might have been guarded against by contract. The loss, if loss it be, is the result of the negligence of the administrator.—1 *Story Eq.* 94, 118 ; *Marine Ins. Co.* vs. *Hodgson,* 7 *Cranch,* 336 ; *Penny* vs. *Martin,* 4 *Johns. Ch.* 569.

2d. No mistake of *fact* is shown. The confession of judgment by his attorney at law, was a mistake of *law* : *ignorantia legis excusat neminem* is a maxim of almost universal application. Again ; ignorance is not mistake, says Lord Loughborough.

3d. No fraud or imposition imputed.

Relief should not be granted; for so much of the Equity of the bill as depends upon the mistake of the Attorney at law is *res adjudicata.* The other matters of equity averred, were susceptible of decision in the court of law below, and existing within the knowledge of the administrator (the plaintiff in error) before a confession of judgment was made by his attorney. They should have been plead. They could have been brought to the notice of the court by a plea of *puis darrien continuance.* —*Le Gueu* vs. *Governeur,* 1 *Johns. Cases,* 465 ; *Simpson* vs. *Hart,* 1 *Johns. Ch.* ; *Hughes* vs. *Blake,* 6 *Wheat. Rep. ; Drewry on Injunctions,* 65.

A party who has mistaken or misshapen his defence at law, cannot require relief in Equity.—*Evans* vs. *Solly,* 9 *Price ; Exc. R.* 525.

Inattention, omission, or neglect, however fatal the consequences may be, is not of itself an equitable ground of relief against a judgment at law. Equity will not interfere where there is *crassa negligentiæ* on the part of a defendant at law.—*Bateman* vs. *Willoc,* 1 *Schoales and Lefroy* 217 ; *Protheroe* vs. *Forman,* 2 *Swanst,* 244 ; *Penny* vs. *Martin,* 4 *Johns. Ch. R.* 566 ; *Dodge* vs. *Strong,* 2 *Johns. Ch. R.* 228.

The doctrine that the creditors of the firm must first exhaust the joint property, before they can reach the separate property of the intestate partner, and then only in Equity, has not ever been recognized in Georgia—it would subvert the priorities established by the act of 1792.—*Prin. Dig.* 229. The doctrine is borrowed from the civil law originally. It is distinctly embodied in the bankrupt laws of England. It has not been universally adopted in America—it is not the settled doctrine in Courts

HAWKINSVILLE, JUNE TERM, 1846. 137

Bostwick vs. Perkins et al.

of Equity.—*Cowell* vs. *Sikes*, 2 *Russell*, 191, 194, 196; *Story on Partnership*, 516, 517.

If it was a settled and undoubted principle, the defendants in error would have been entitled to proceed against the separate property of Bright, the deceased partner, having exhausted the joint property of the firm, or rather having had a return of *nulla bona* to their execution against Walker, the survivor.

LUMPKIN, Judge, delivered the opinion of the court.

If ever there was a clear case, I think the present is. The facts are these: James Bright and James Walker, a mercantile firm, trading under the name of Bright & Walker, executed a partnership note to Perkins, Hopkins and White. Shortly thereafter Bright died, and letters of administration were granted upon his estate to Alfred C. Bostwick. Suit was instituted by the payees of the paper against Walker, the surviving partner, and Bostwick, as administrator of Bright, jointly. The latter was released from the action, under the Statute of the State which exempts estates from suit for twelve months from the granting of administration. Judgment was rendered against Walker. In due time the case was recommenced against the representative of Bright, who, by his attorney, confessed judgment, and entered an appeal within the four days prescribed by the Judiciary. The appeal was dismissed, upon the ground that the right to enter it was not reserved in the confession. An execution issued, *de bonis testatoris*, upon which there was a return of *nulla bona* by the sheriff. The action was then brought against Bostwick, suggesting a *devastavit*, and a judgment obtained, charging him personally with the debt. *No plea was filed to either suit.* He now invokes the aid of a Court of Equity to relieve him, for the following reasons, to wit, That at the *first* term of the *first* action he set up no defence, because he believed that he had assets in his hands sufficient to pay the *individual* debts of Bright; but before the trial, several negroes belonging to the estate, and of the value of one thousand dollars, were carried out of the State by the persons to whom they were hired, without his knowledge, authority or consent. That he confessed judgment, *intending* to reserve the right of appeal, but that it was not done. That he did not attend court at the *judgment* term of the *second* action on account of the dangerous illness of his wife, and that judgment was awarded against him for the whole amount of the plaintiff's demand and costs. He alleges in his bill that he never received any of the partnership effects, and that he had no notice of the partnership debts. He offered to account for the value of the property run off, if the court should adjudge it right for him to do so; and upon doing this, prayed a perpetual injunction against the execution's being enforced against him *personally*. The defendants demurred generally to the bill for want of Equity, and it was dismissed; and we are called on to reverse that decision.

Were we to do so, litigation would be endless, and the maxim, *vigilantibus non dormientibus servit lex*, would be a nullity and a mockery. While the law is made for all, it will not, it cannot, protect those who neglect to take care of themselves. It affords no relief to such as sleep over their rights. They must suffer the consequences of their own want of watchfulness, however hard they may be. All parties are entitled to their day in court, time and opportunity of being heard. If they let these slip, or omit to

avail themselves of them at the proper stage of the proceeding, it is in vain afterwards to show that they had a good and available defence. It is too late to take advantage of it. And this general doctrine is too well established to be questioned, and, we may add, " too useful to admit of innovation."

Let us examine for a moment the reasons assigned by the plaintiff in error for not doing his duty. For of the law it may be truly said—that it " knoweth our frame," and is often indulgent to the infirmities of our nature, and will extend a helping hand to extricate us from our misfortunes—if it be practicable. He states that he omitted to plead, *plene administravit*, at the *docketing* term of the *first* action, because he then had in his possession assets enough to discharge the *individual* debts of his *intestate*. Admit the fact and how does it profit him ? He was sued on a *partnership* claim ; and allowing it to be true that *individual* property is primarily liable for *individual* debts, yet so far from that being any good excuse why he need not plead, it rendered it doubly incumbent on him to do so, if he would screen himself from personal responsibility on this partnership demand. If he forebore to file any plea, what, I ask, could prevent the plaintiff from getting an absolute and unconditional judgment, *de bonis testatoris* ? Nor did the removal of the negroes before the *trial* term lessen the obligation to interpose the defence or interfere with it in the least. Moreover, a judgment by *default* can be opened at the *second* term to let in a meritorious defence. And as this eloigning of the assets was *new* matter of defence originating pending the action, and *post ultimam continuationem*, it was good cause of plea *puis darrien continuance.*

He avers in the next place, that he confessed judgment *intending* to reserve the right of appeal. Was this a secret design locked up in his own breast ? It is not pretended that he communicated it, much less that he was prevented from perfecting his purpose by the misconduct of his adversary. Could not care and prudence have guarded against this neglect ? Even if the injustice complained of was the result of igno-rance, as is probably the fact, can equity interfere to relieve the sufferer ? I apprehend not—*Ignorantia non excusa legem*, is still the stern mandate of the courts on this head. Men have been found subject to the penalty of laws which were never duly promulgated. And to the dis-grace of our legislation, be it remembered, that there are numerous acts in our digests, which the citizens of Camden and of Rabun, residing several hundred miles from the capital, have been required to observe and obey at their peril " *from and immediately after their passage.*" Not only must individuals endure the consequences of the slightest negligence or inadvertence, but of *mere ignorance* also.

As to the providential detention of Mr. Bostwick from the *trial* term of the *second* cause, it is extremely doubtful whether his presence could have effected any escape from the results of his past default. I am inclined to the opinion, that it could not. He had not only permitted himself to be bound hand and foot by the first verdict ; but he had made no attempt, in the long interval which followed, to reverse that recovery, by a motion for a new trial, bill of review, or otherwise. How true it is, that our troubles may generally be traced to some imprudence or neglect of our own.

Were it necessary to fortify our opinion by authority, it is abundantly at hand. We will, passing by all others, quote a few decisions only, from our sister State of South Carolina—at present, second perhaps to none in the Union for judicial ability ; besides, her institutions, as well as the habits of her people, are very similar to our own.    In the case of *Maxwell* vs. *Connor*, (1 *Hill's Ch. Rep.*, 22,) Chancellor Johnston makes the following remarks :  " If a defendant has been before a *competent* tribunal which has proceeded to *judgment*, that decision, *until reversed*, is conclusive upon him in every tribunal having concurrent or other jurisdiction. It is conclusive upon him as to any matter of defence, not only presented, *but which could have been presented by him*; and it is conclusive upon him, although the judgment be erroneous, if he acquiesced in it, and does not proceed to reverse it.    It is conclusive upon him because , whenever a party is brought into court, *he is bound to full diligence*, which if he uses he will obtain his rights.    If he neglects *either in putting in proper pleas* or introducing all his evidence to support them, he has no one to blame but himself; *nor will his neglect in one court be allowed to give him a right either in that court or another.*"

The Chancellor adds :  " It is truly a hard case if a party entitled to relief in both courts, is repelled from both and is relieved in neither.    *But the wholesome rule of law cannot for that reason be broken down.    In that case ten would suffer for the one relieved.*"

The principles laid down in the case of Frances Micheau administratrix of Neil Brown, *vs.* A. A. Caldwell, administrator of George Chur, (1 *Spear's Rep.*, 277,) are exceedingly broad.    Here a judgment had been obtained against the administratrix without any plea being filed—on account of the instructions to the attorney to put in the defence having been mislaid.    It was conceded that there was no estate at all, and that the administration was taken out for the sole object of prosecuting a suit.    The defendant moved to file the plea in the first case, which was refused, for the reason I suppose that it came too late, although that does not appear. On the suit suggesting a devastavit, she offered to prove there was no waste, by showing that the intestate was in utter destitution, not even leaving enough to pay funeral expenses.

But the Circuit Judge held that the first judgment against the administratrix was conclusive, and that it was too late now to prove that in reality there was no estate.

On the appeal, Wardlaw, Justice, in delivering the opinion of the court, says—" Her neglect to enter the plea was an admission of assets, which she cannot now retract without contradicting the judgment."

The decision of the court below was sustained, and the motion for a new trial dismissed.

Had the defence in the case at bar arisen subsequent to the *first* or even the second judgment, doubts might then have been entertained as to its admissibility.    For in the case of *Cross* vs. *Smith* (in *East*,) Lord Ellenborough asserts that no case at law had been decided, where an executor who had " become once responsible for his testator's property, could be discharged as against a creditor, either on the score of inevitable accident, as destruction by fire, loss by robbery, or the like, or reasonable confidence disappointed."    No such question occurs here.    The persons to whom the property was hired, are charged to have removed it

some five or six years ago; no effort is made to recover it; and the singularity of this case is, that the administrator offers to account for the value of the negroes the removal of which is the sole ground of his appeal to chancery.

By the confession of judgment he admits assets to pay the debt. The return of the sheriff shows that they have been wasted. He has been legally and formally, and by default throughout on his part, convicted of a *devastavit*, and been made liable for the demand in controversy, *de bonis propriis*. And without submitting any satisfactory excuse for his neglect, he seeks relief by going into equity, and there alleging that a part of the intestate's effects, which he is willing to account for, having taken no steps to reclaim them, were removed intermediate the *appearance* and *trial* Term of the *first* action.

This naked narrative is enough; no argument or illustration could make it plainer. *Res ipsa loquitur.*

Let the decree of the court below be affirmed with cost.