## 156.   GAINESVILLE MIDLAND RAILWAY v. JACKSON.

1. The Court of Appeals was created by constitutional amendment lawfully submitted to the people for ratification at the general State election held October 3, 1906. In pursuance of the provisions of the amendment, the Governor of the State issued a proclamation on October 12, 1906, declaring that the amendment had been duly ratified. Held, that the Court of Appeals was established on the date of the Governor's proclamation. Held further, that the Court of Appeals had jurisdiction of a writ of error signed by the judge of a city court December 31, 1906.
2. There was no error in the ruling of the court complained of, and the issues in the case were fully and fairly submitted to the jury. The evidence clearly authorized the verdict.

Action for damages, from city court of Hall county—Judge Prior. December 22, 1906.

Argued February 26,—Decided April 25, 1907.

H. H. Dean, for plaintiff in error.

W. B. Sloan, H. H. Perry, contra.

HILL, C. J. Juda Jackson brought suit in the city court of Hall county against the Gainesville Midland Railway, for damages resulting from personal injuries which she received from the

defendant. On the trial of the case, the jury returned a verdict in her behalf for $750. The defendant made a motion for a new trial, and assigns error on the judgment of the trial court in refusing the motion. When the case was called in this court, a motion was made to dismiss the same because the court had no jurisdiction. The want of jurisdiction was placed on the ground that the certificate to the bill of exceptions, which constituted the writ of error, was signed by the judge on the 31st day of December, 1906, and that the Court of Appeals was not organized, and there was no such court in existence, until January 1, 1907.

The constitutional amendment creating the Court of Appeals provided for the submission of the amendment to the vote of the people, as required by the constitution of this State in article 13, section 1, paragraph 1, and that, if ratified, the Governor should, when he ascertained such ratification from the Secretary of State (to whom the returns should be referred as in cases of the election of members of the General Assembly, to count and ascertain the result), issue his proclamation announcing such result and declaring the amendment ratified. Acts 1906, p. 27. The constitutional amendment thus proposed and submitted to the people was ratified at the general election held on October 3, 1906, and the Governor, after ascertaining the result as provided by law, issued his proclamation on the 12th day of October, 1906, in which he declared that the amendment creating the Court of Appeals was ratified. Executive Minutes 1906, p. 35. Under the provisions of this constitutional amendment, the Judges of the Court of Appeals were elected by the people, on November 6, 1906. Under these public acts, of which this court takes judicial cognizance, the Court of Appeals was, therefore, created by the ratification of the constitutional amendment, and became an established court when the Governor issued his proclamation, October 12, 1906. It is true the court did not organize by the qualification of the judges until January 2, 1907, but the organization of the court is an entirely different matter from its creation, and takes place subsequent to its establishment. On the 31st day of December, 1906, it was competent and legal for a judge of a city court of this State to sign a writ of error sued out from a judgment of that court to the Court of Appeals. Counsel for the defendant in error has confounded the Judges of the court

with the court. The court when created became at once, upon the proclamation of the Governor, an integral part of the judiciary department of the State, and it existed as such whether there were Judges thereof or not. We therefore refuse the motion to dismiss.

On the merits of the case, the plaintiff in the court below proved substantially the following facts: On February 15, 1906, she boarded a passenger train on the line of the defendant's railway, at a regular station, and when she had gotten upon the platform of the train, and before she had time to get into the car or had time to get a seat, and while she was still on the platform of the car, it suddenly started and made a sudden jerk, throwing her down with great force across the coupling of the cars, and very seriously and permanently injuring her. She was a negro, and as she got on the platform, and was starting to go into the car, an employee of the company told her not to go into the car into which she had started, but to go into the other car, and, in obedience to the order, she turned for the purpose of going into that car, but before she had time to enter or to get a seat, the sudden jerk occurred, by which she was injured. The evidence showed that the jerk was very violent, that the plaintiff was thrown against the couplings, and that she received very serious and permanent injuries; that she was confined to her bed, suffering great pain, for six weeks; that she was permanently crippled, and her capacity for earning money destroyed. Before she was injured, she was a midwife and doing a prosperous business, having as many as twenty cases in the last year during which she was able to officiate. She was not certain as to her age, but said she was seventeen years old before the war, and this would make her about sixty-two years old. Under the facts of the case, there was no merit in the statutory grounds of the motion for a new trial. The verdict was amply supported by the evidence. We will consider the special grounds of the motion for a new trial that we think of sufficient importance.

The son of the plaintiff, soon after she was hurt, was sent for the doctor, and a declaration which he made to the doctor that he (the doctor) would get $100 out of the railroad, and more besides, if he would attend his mother and testify in her favor, was sought to be shown. The court excluded the declaration, and

error is assigned thereon. We do not think the court, committed error in excluding the testimony. There is no evidence that the admission was authorized by the mother; and the sending of her son for the doctor certainly did not constitute him her agent for any other purpose, and no such statement as the one which the son was alleged to have made can possibly be considered as within the son's agency simply to go for the doctor. An admission by the agent, to bind the principal, must have been a part of the negotiation, and made in pursuance of his power as an agent. Civil Code, §§ 3034, 5192; *Turner* v. *Turner,* 123 *Ga.* 7.

Under the law, the defendant was bound not to start the train until the plaintiff had reasonable time to get from the platform to her seat, and it was the duty of the defendant to assign the plaintiff to the proper car. Civil Code, §§ 2268, 2270.

The charge of the court was fair and impartial, and submitted to the jury the question of diligence both on the part of the plaintiff and the defendant, and we do not think that the exceptions made to the portions of the court's charge on the subject of the duty of the defendant are meritorious. If there were any inaccuracies in the charge on this subject, they were not such as to demand a new trial, in view of the evidence in the case.

The other exceptions to the judge's charge are based upon alleged errors in the use of the mortality tables. These grounds of the motion have reference simply to the amount of the verdict. No attack is made on the amount of the verdict specifically. It is not claimed that it was excessive; and therefore, if this part of the charge was error, it was harmless error; and especially is this true when the amount of the verdict indicates very clearly that the jury did not give much attention to the question of permanent inability to earn money. We think that where exception is made to the amount of the verdict, it should be specific, and that such an exception is not included in the general assignment that the verdict was contrary to law and the evidence. This court will not consider any question simply relating to the amount of the verdict, unless such specific exception is made; and will not consider an assignment on this ground at all, if there is any evidence to support the amount of the verdict. None of the grounds which allege error in instructions as to the use of the mortality table will be considered by this court, because there are no

tables set out in the evidence. *Western & Allantic R. Co.* v. *Hyer,* 113 *Ga.* 776. The brief of evidence simply states "The Carlisle mortality table introduced in evidence." We do not think this is sufficient. *Atlanta Ry. Co.* v. *Monk,* 118 *Ga.* 453. But, as before intimated, we think the amount of the verdict in this case is amply supported by the evidence, and the sum found in behalf of the plaintiff is moderate and conservative, and if any error was committed by the court in his charge in reference to the use of the tables, it did not hurt the defendant. We do not think that any material or substantial error was committed by the court, and the verdict should not be disturbed.

*Judgment affirmed.*