363. DURANT LUMBER COMPANY *v.* SINCLAIR & SIMMS LUMBER COMPANY.

1. Although the Court of Appeals came into existence on October 12, 1906, the Supreme Court retained jurisdiction of writs of error from city courts until January 1, 1907; and it still has jurisdiction in such cases, to the extent that it may cause them to be filed and transferred to this court.

2. One who, having bought the business of another, fills an order sold by the latter to a third person, can not maintain in his own name a suit against such third person upon the contract of sale.

(*a*) In such a case he may sue in the name of his predecessor in business, with himself as usee.·

(*b*) In that event the defendant may set off counter demands existing in his favor against the nominal plaintiff.

3. The evidence was insufficient to show a contract between the plaintiff and the defendant.

4. While an undisclosed principal may sue upon a contract made with his agent, yet the opposite party to the contract will be entitled to set off any claim he may have against the agent.

Complaint, from city court of Valdosta—Judge Smith.    November 15, 1906.

Submitted May 14,—Decided· June 26, 1907.

*J. M. Johnson, A. J. Little,* for plaintiff in error.

*G. A. Whitaker,* contra.

POWELL, J.    The Durant Lumber Company bought a carload of lumber from one Wells, who was operating a mill business.    The Sinclair & Simms Lumber Company cut the lumber and shipped it.    The Sinclair & Simms Lumber Company, which for convenience we will herein call the Sinclair Company, brought suit in its own name against the Durant Lumber Company, which herein we will likewise call the Durant Company.    For original answer the defendant filed a general denial of the paragraph of the petition alleging indebtedness upon the account.    To meet a contention of the plaintiff that Wells was acting as agent of the Sinclair Company in making the contract, the defendant filed an amendment to the answer, in which he set up, that if Wells was agent of the plaintiff, the defendant had no knowledge of the fact, that Wells was indebted to the defendant, and that as to the remainder of the money beyond Wells' indebtedness to the defendant, it had been paid into court under a garnishment proceeding instituted against Wells by one of his creditors.    It appears, from the evidence, that shortly after Wells made the contract of sale he sold out his business to the Sinclair Company.    The contention of the plaintiff is, that before the lumber was cut, Wells notified the Durant Company of this fact; and that Wells, as the agent of the plaintiff, made a new contract, whereby the plaintiff was to cut it instead of him.    The defendant denied that it had any intimation that Wells had sold out, or that the Sinclair Company was to cut the lumber, until after it had been shipped.    Upon this point the plaintiff's case rests solely upon the following testimony of Wells:    "I did tell

him [Durant] of the sale a day or two after it was made and before this lumber was cut that is sued for. I told Mr. Durant that I had sold out, and that the Sinclair & Simms Lumber Company would have to fill the balance of their orders if they were filled; that I had nothing more to do with them. That was before this lumber was cut. Don't remember what Mr. Durant said about that, only he said he wanted his orders filled. I was managing the business of the Sinclair & Simms Lumber Co." Q. "You say that just a few days after you sold out to the Sinclair & Simms Lumber Co., you put Mr. Durant on notice?" A. "Yes sir, I came up here in a day or so after I had sold out, and told him that I had sold out. I told him in that conversation that I would be with the Sinclair & Simms Lumber Company." Q. "Was there anything said between you and Mr. Durant about the Sinclair & Simms Lumber Co. continuing to cut for him?" A. "Well, he said that he wanted his old orders filled, that he had placed his orders and he wanted them filled. I told him that I did not have anything to do with them, that was, with the Sinclair & Simms Lumber Company." Q. "What did he say in that connection?" A. "He said that he wanted them filled." There was evidence of an indebtedness existing from Wells to the Durant Company at the time that the order was taken and at the time it was filled. On this point the court charged the jury: "The defendant in this case could not take this car of lumber (even if Wells was the agent, and he dealt with him in ignorance of his being the agent and the other parties the principals) and place any part of it to the payment of the account due by W. E. Wells to him, which existed prior to this time, or any other account, except payment of money on this particular car; and they don't claim in this case to have paid any money on this particular car, except as paid in court; and there is no evidence to justify a verdict in favor of the defendant on the question of payment, and it resolves itself down to this one question in the case, and there is but one question you are to decide, and that is whether or not the shipment of this car of lumber by plaintiffs in this case to defendants was authorized by defendants." The verdict was in the plaintiff's favor. To the overruling of the motion for a new trial the defendants filed a bill of exceptions which was signed December 13, 1906, and filed in the office of the clerk of the Supreme Court on December

22, 1906. After January 1, 1907, the case, having originated in a city court, was transferred by the Supreme Court to this court. The defendant in error has filed a motion to dismiss the writ of error, on the grounds, that on December 13, 1906, the Court of Appeals had exclusive jurisdiction of cases arising in city courts, and the writ of error signed that day was made returnable to the Supreme Court; also that on that date the Supreme Court had no jurisdiction to entertain writs of·error from city courts; that the Supreme Court, being without jurisdiction, had no power to transfer the case.

1. We will first dispose of the motion to dismiss the writ of error. It is ill founded. By the constitutional amendment of 1906 (Acts 1906, p. 24), the Supreme Court retained jurisdiction of writs of error from city courts until January 1, 1907. Express power was also conferred on that court to transfer such cases, of the class mentioned, as were pending therein on January 1, 1907, to the Court of Appeals. Even now, by virtue of another provision of the same constitutional amendment the Supreme Court may entertain jurisdiction of writs of error in cases not reviewable by that court, to the extent of transferring them to the Court of Appeals: "and the Court of Appeals shall try the cases so transferred." A writ of error which is made returnable to the Supreme Court, when it should be made returnable to the Court of Appeals, is not void. The framers of the constitutional amendment wisely made provision for such cases; for although frequently there is doubt as to which court has the jurisdiction, the writ of error may in all cases be filed in the Supreme Court, and if that court finds that the case is within the jurisdiction of the Court of Appeals, it will be transferred. This motion to dismiss arises from a misconception of our ruling in *Gainesville Midland Ry.* v. *Jackson,* 1 *Ga. App.* 632. While, as held in that case, the Court of Appeals came into existence October 12, 1906, yet this in no wise interferes with the powers reserved to the Supreme Court, under the constitutional amendment creating this court.

2. The judgment must be reversed. Certainly the Sinclair Company could not sue in its own name upon the original contract between Wells and the Durant Company; for he was not the agent of the Sinclair Company when the contract was made. It might have maintained a suit in the name of Wells for its use, but the

defendant. would have been entitled to the protection of all the defenses it might have had against Wells. *Atlantic Coast Line R. Co. v. Hart Lumber Co.,* ante, 88.

3. Nor was there sufficient evidence of a subsequent new contract, whereby the defendant bought from the Sinclair Company, through Wells as its agent. The evidence upon which the plaintiff must rely to establish that contention is set out above. It shows that Wells notified the defendant that he had sold his sawmill to the plaintiff, and that if the lumber was cut the plaintiff would have to cut it. Nowhere does Wells say that the Durant Company agreed to surrender its contract with him and to make a new purchase from the Sinclair Company; but he says that Mr. Durant replied that "he wanted his old order filled, that he had placed his orders and wanted them filled." The words quoted are apt for the expressing of the idea that Durant insisted on Wells' complying with his contract, even though it were necessary for him to get some one else to cut the lumber, and inapt to express the idea that a direct purchase by the Durant Company from the Sinclair Company was contemplated.

4. But even conceding that the plaintiff's evidence was such as to show that Wells contracted with the defendant as the agent of Sinclair Company, yet since the defendant denied any knowledge of the agency until after the shipment was made, the court's instructions quoted above were erroneous. While an undisclosed principal may sue upon a contract made with his agent, yet the opposite party to the contract will be entitled to set off any claim he may have against the agent, and not merely such claims as arise out of the particular contract in question. *Ruan v. Gunn,* 77 *Ga.* 53; *Rosser v. Darden,* 82 *Ga.* 219. *Judgment reversed.*