## 1527.  WELLBORN *v.* SOUTHERN RAILWAY COMPANY.

Whenever a shipper delivers property to a common carrier for transportation, there arises at once, by implication of law, a contract of carriage between the parties.  Where the shipper seeks to hold the carrier liable for breach of this contract in failing to deliver the goods safely at destination, he need not, in order to make out a prima facie case, show any written bill of lading, but may prove the contract of carriage by showing delivery of the property to the carrier, through himself or agent.  If the agent delivers the property in his own name and his principal is undisclosed, the latter is bound by any special contract, so far as the terms thereof are legal and binding, which is made between the agent and the carrier; but if the company receives the goods as those of the principal, and, without the knowledge or consent of the latter, the carrier attempts to make a special contract with the agent, the principal is not bound thereby, unless he does some act from which the law infers a ratification.

Appeal, from Franklin superior court—Judge Worley.  September 30, 1908.

Argued January 26,—Decided May 4, 1909.

*H. H. Chandler, James H. Skelton,* for plaintiff.

*A. G. & Julian McCurry,* for defendant.

PowELL, J.  Wellborn sued the Southern Railway Company in a justice's court, and alleged a breach of the company's contract to carry the property safely.  The case was appealed to the superior court, and there a nonsuit was awarded.  It appears, from the testimony, that Wellborn desired to ship a car-load of stock from Lavonia, Georgia, to Atlanta, and that he instructed a Mr. Jones to deliver the stock to the railroad company and to load the same upon the cars.  Jones had no further authority in the matter than to load the stock for Wellborn.  The agent of the company, however, asked him to sign a special contract of shipment in the name of the plaintiff, and he thereupon, at the agent's request, signed the plaintiff's name to the special contract.  One of the horses sent by this shipment was injured while being transported.  The plaintiff, on the witness stand, denied that he had signed the special contract or had authorized Jones to sign it, and stated further that he did not know of the existence of the contract at the time he paid the freight on the car of stock, when it was delivered at destination.  When it thus appeared that there was a written contract of shipment, and the plaintiff was unable to produce it

and introduce it in testimony, the judge excluded testimony offered for the purpose of showing that there had been a delivery of the property to the carrier, and awarded a nonsuit on the ground that the written contract was the highest evidence.

If Jones, without disclosing his agency, or without the agent of the company being aware that the plaintiff was his principal, had offered the shipment to the railroad company for transportation and had made, as a part of this transaction, a special contract of carriage, or if the plaintiff, knowing that Jones had made this special contract, had ratified his act in so doing, by taking the benefit of any particular advantage which had accrued by reason of that contract, such as riding on a pass given as a part of it, then the rights of the parties would have been governed by the special contract of shipment, so far as legally enforceable. *Central Ry. Co.* v. *James,* 117 *Ga.* 832 ( 45 S. E. 223) ; *Durant Co.* v. *Sinclair Co.,* 2 *Ga. App.* 213 (58 S. E. 485). It appears, from the testimony in the present case, however, that the agent had no further authority than merely to carry the stock to the railroad and put it on the car, and that the agent of the railroad knew that Wellborn was the real shipper, and indeed had this servant who brought the stock to sign a special contract in Wellborn's name. It further appears that Wellborn did not know of this transaction, and there is no testimony that he ever in any way ratified it. It was, therefore, no contract of his. He did not sue upon this contract of carriage, but sued upon that implied contract which arose from delivery of the shipment to the carrier for transportation. It is not necessary to produce or account for a bill of lading, in order to show that property has been delivered to a carrier for transportation. The plaintiff had a right to stand upon the implied contract, and the court erred in granting a nonsuit. Further, it would seem that the act approved August 18, 1906 (Acts 1906, p. 102), would prohibit the making of special contracts of carriage with a view of limiting the carrier's liability as against the initial shipper or holder of the bill of lading.    *Judgment reversed.*