3450.  ATLANTIC COAST LINE RAILROAD COMPANY *v.*
GORDON & COMPANY.

1. Under the Civil Code (1910), § 4126, providing that, on cash sale of cotton and certain other agricultural products, title does not pass by delivery, until the cash is in fact paid, a sale so intended by the parties is no less a cash sale because actual payment of the cash is not made concurrently with delivery, but is temporarily deferred to meet the convenience of the parties in making a settlement.

2. While it is true that if a concealed principal sues upon a contract made by his agent in the latter's name, the defendant may set off any counter-claim he has against the agent with whom he contracted, as if he were the principal, whether the counter-claim grows out of the contract in question or not, still this doctrine does not apply where the person contracted with by the agent becomes the moving party and attempts

to hold the concealed principal, and it appears that he who is thus moving did nothing and gave up nothing on faith of the agent's apparent principalship.

3. One who has the right of possession of personal property which is converted by a stranger or a mere wrong-doer may sue in trover and recover the full value of the property, though his right of possession be held under a qualified title and only for some special purpose, such as security for a debt; still the plaintiff's recovery in such a case is held for the benefit of himself and for all others in community of title or possession with him, as their respective interests may appear. Whenever a plaintiff who, though having a right of possession, has it only for the special purpose of securing a debt brings trover against the person for whose benefit he would, if he recovered the full value of the property, hold the overplus beyond his debt, the court, on the trial of the trover case, will adjust the matter by limiting the amount of his recovery to the amount of the debt.

DECIDED JANUARY 15, 1912.

Trover; from city court of Savannah—Judge Davis Freeman. March 27, 1911.

*P. W. Meldrim, Shelby Myrick,* for plaintiff in error.
*W. W. Gordon Jr., E. S. Elliott,* contra.

POWELL, J. This case has been before this court previously. See 7 *Ga. App.* 354 (66 S. E. 988). The only point there involved (as to whether nonsuit was proper because the plaintiff had not shown the value of the property in dispute) cuts no figure in the present record. The case is in trover. The plaintiffs, Gordon & Company, are cotton factors at Savannah. Giddens was a customer of theirs at Kirkland, Georgia. On January 18, 1908, they had certain cotton of Giddens's on which they had made advances to an amount probably exceeding the value of the cotton. On that date, Giddens himself being absent from his place of business, a brother of his was in charge. A man named Stone brought in a bale of cotton which the brother bought from him for Giddens, telling Stone that Giddens would hand him the money for it on his return to the store on the next day. This brother caused the cotton to be placed in the custody of the defendant, the Atlantic Coast Line Railroad Company, and obtained a bill of lading for it in the name of Gordon & Company, as consignees. When Giddens returned to the store and Stone requested his money, Giddens refused to pay the price his brother had named, and he and Stone rescinded the trade and so notified the agent of the railroad company, who, at their instance, issued another bill of lading, in favor of Stone as consignor, and of Butler, Stevens & Company, of Savan-

nah, as consignees. In due time the railroad company delivered the cotton, on this last bill of lading, to Butler, Stevens & Company. On January 18, Giddens (or his brother writing in his name) sent to Gordon & Company the bill of lading first issued for the cotton, writing to them, "Please handle to best advantage; please pay draft made to James Summerlin for $55.05." Gordon & Company refused, however, to pay the draft mentioned, because Giddens's account was already overdrawn. There was also a contention by the plaintiffs that Stone had authorized Giddens to ship the cotton to Gordon & Company for him, he (Stone) being a concealed principal. Whether there is any legal evidence to support this contention we need not determine, in the light of what we shall decide as to the point. The value of the cotton, as found by the jury, was $47.19. The total amount due Gordon & Company by Giddens, and upon which they based their right to have the cotton, was about $35. The plaintiffs' case was based on the theory that they had the right to the possession of the cotton by reason of the issuance of the bill of lading, and that the railroad company's action in shipping it and delivering it to Butler, Stevens & Company was a conversion. Under an instruction from the court that if the jury found the issues in favor of the plaintiffs, they should find for them the full value of the cotton as damages, the jury rendered a verdict in favor of the plaintiffs, for $47.19.

1. If Stone was the true owner of the cotton and made a cash sale of it to Giddens or his brother, and the cash was not paid him, no title passed out of him to Giddens, and none from Giddens to the plaintiffs; and in that event the plaintiffs could not recover. In this State the title to cotton and certain other agricultural products sold on cash sale does not pass by delivery, until the cash is in fact paid. Civil Code (1910), § 4126. The fact that Stone agreed to await the return of Giddens on the next day after he delivered the cotton to Giddens's brother before receiving the cash in hand did not make it a credit sale, if a cash sale was intended. *McCall* v. *Hunter*, 8 *Ga. App.* 612 (70 S. E. 59); *Flannery* v. *Harley*, 117 *Ga.* 483 (43 S. E. 765).

2. The plaintiffs claim that there was evidence that Giddens, in shipping the cotton to Gordon & Company, was acting for Stone as concealed principal, and relies upon the doctrine that if the concealed principal sues on a contract made by his agent, the defendant

may set off any counter-claim he has against the agent with whom he contracted as principal, whether the counter-claim grew out of the contract in question or not (as to which, see *Durant L. Co.* v. *Sinclair L. Co.,* 2 *Ga. App.* 209 (4), 58 S. E. 485, and citations). This principle would plainly have been applicable if Giddens were acting as agent for Stone as concealed principal and Gordon & Company had honored the draft, or if Stone, or any one holding under him, were attempting to hold Gordon & Company in any wise liable for the price of the cotton, but we do not think that it is applicable here, where Gordon & Company did nothing and gave up nothing on the faith of Giddens's ownership of the cotton. The reason of the rule does not extend to such cases; and the rule should not. Be that as it may, the only proof, so far as we see, of the existence of any such relationship between Stone and Giddens is found by implication from a declaration contained in one of Giddens's subsequent letters to Gordon & Company. As between the parties to this suit the admissions and declarations of Giddens as to such matters were mere hearsay and of no probative value.

3. But after all, there is one absolute and controlling reason why the verdict can not stand. Take the claims of Gordon & Company at their highest, their only right to this cotton is to hold it for the protection of their factor's lien, for some $35. If we could concede their lien and their right to the possession of the cotton as security therefor, still it must be remembered that they are not suing a stranger to the title. The railroad company, in committing the alleged conversion, was acting on behalf of the person holding the general title to the property, and, for the purposes of this suit, stands (to speak metaphorically) in that person's shoes. It is undoubtedly true that one having a right of possession may sue a stranger or mere wrong-doer in trover, and recover the full value of the property, though his right of possession rests on only a qualified title. In such case the money recovered is held by the plaintiff for the benefit of himself and all others in community of possession or title with him, as their respective interests may appear. Compare *Kaufman* v. *Seaboard Air-Line Railway,* ante, 248 (73 S. E. 592). If the defendant in the trover suit has an interest in the property, so that in the event of a recovery the plaintiff would, under the rule just mentioned, hold any money recovered wholly or partly for his (the defendant's) benefit, the rights of the

respective parties may be adjusted in the trover suit, where the plaintiff elects to take a money verdict; and if the plaintiff, though having a right of possession, is entitled to hold that possession only as security for a debt, and the defendant is the one to whom the property would go after the debt is paid, the plaintiff in the trover suit can in no event recover a money judgment for more than the amount of his debt. In such cases, if the rule were otherwise, a multiplicity of suits would arise. For instance, we will say that A. has pledged an article worth $40 to B. in pawn, for a debt of $10, and illegally takes it out of B.'s possession. B. sues him in trover. If he were to recover $40, the full value of the article, he would at once hold $30 for A.'s use and benefit, as to which A. might, upon demand, maintain an action for money had and received. Therefore, the rule is that in all such cases the plaintiff's money verdict will be so limited as to represent his ultimate rights.

A fair application of this rule is found in those cases where property is sold on conditional sale, and, upon default on the purchaser's part, the seller brings trover. In such cases it has been uniformly held that the plaintiff's recovery can never exceed the amount of his debt. See *Elder* v. *Woodruff Hdwe. Co.*, 9 *Ga. App.* 484 (71 S. E. 806), and cit. Whenever, in a trover case, the proof shows that the interest of the plaintiff is less than absolute ownership, and the defendant is the owner of the general property, the measure of damages will be the value of the plaintiff's interest therein, whatever that may be. *Holmes* v. *Langston,* 110 *Ga.* 861, 867 (36 S. E. 251), (a case between pledgor and pledgee). " A creditor's recovery from his debtor in an action of trover for converting collaterals can not exceed the amount of the debt with legal interest." *Bell* v. *Ober,* 96 *Ga.* 214 (23 S. E. 7). See, generally, on the subject, *Hays* v. *Jordan,* 85 *Ga.* 741 (11 S. E. 833, 9 L. R. A. 373). In the case at bar, if the railroad company committed any conversion as against the plaintiffs, it did so under instructions from both Giddens and Stone, and, thus having become their agents in the matter, is entitled to justify and defend under whatever rights they would have been entitled to set up if the plaintiffs' action were proceeding against them or either of them, instead of proceeding as it does against the carrier. Therefore, in no event should the plaintiffs' recovery exceed the amount of their debt.                    *Judgment reversed.*