### 5110. BUTLER, STEVENS & CO. v. MOSELEY.

1. Under the undisputed evidence the plaintiff was not entitled to recover. The evidence demanded a finding that the sale of the cotton sued for was on credit, that the defendants were innocent purchasers from the plaintiff's vendee, and that the plaintiff, by his conduct, was estopped from asserting any claim to the cotton.
2. A plea of estoppel by judgment should allege all the facts and exhibit all the record essential to show that the plea is meritorious.

DECIDED JANUARY 27, 1914.

Trover; from city court of Savannah—Judge Davis Freeman. March 25, 1913.

*Adams & Adams,* for plaintiffs in error. *Oliver & Oliver,* contra.

POTTLE, J. Moseley sued Butler, Stevens & Company in trover for four bales of cotton, contending that he had sold the cotton for cash, and that title remained in him and could be asserted against Butler, Stevens & Co., who were cotton factors in Savannah. It was undisputed that Butler, Stevens & Company were innocent purchasers of the cotton from one Purvis, to whom it had been sold by the plaintiff. A son of Purvis delivered to Moseley two bank checks covering the agreed price, and one of the checks was post-dated twelve days. The son testified, that he called Moseley's attention to the fact that this check, for one half the purchase-

price, was post-dated, and that Moseley assented to this arrangement, and delivered the cotton upon the understanding that one half of the amount was not to be paid until after the expiration of twelve days. Moseley, however, denied this and stated that he did not observe that the check was post-dated until after he got home, and that two or three days after the reception of the check he saw Purvis and told him that he did not sell his cotton on credit. According to Moseley, Purvis then replied that he forgot to mention the fact that the check was post-dated, and that he would pay the amount before the first of February if he could. Moseley thereupon told Purvis he would be glad if he would pay the check before the first of February, because he did not sell his cotton that way; and Purvis replied that he might pay it before that date. Moseley presented the post-dated check for payment February 1, and payment was declined because of lack of funds. It appears that the checks were delivered to Moseley by a son of Purvis at Hughland. Young Purvis came in on the train, stepped off upon the platform, delivered the checks to Moseley, and immediately got back on the train and went away. Moseley states that at that time he examined the checks to see if the amounts were correct, but did not notice the difference in dates. It is contended that a verdict in Moseley's favor was not authorized by the evidence.

1. The controlling question in this case is, whether or not the transaction between Moseley and Purvis was a cash sale of the cotton, the price of which was covered by the post-dated check. If the sale was for cash, the title of the seller was undivested until payment in full of the purchase-money, and might be asserted by him even as against a bona fide purchaser from his vendee. In such a case the purchaser would be liable as for a conversion, although he got the cotton in entire good faith and without notice of retention of title by the seller. Civil Code, § 4126; *Flannery* v. *Harley,* 117 *Ga.* 483 (43 S. E. 765); *McCall* v. *Hunter,* 8 *Ga. App.* 612 (70 S. E. 59); *Atlantic Coast Line R. Co.* v. *Gordon,* 10 *Ga. App.* 311 (73 S. E. 594). By the very terms of this section of the code, a sale would be for cash although payment of the actual money might be delayed for a period necessary in the ordinary and usual course of business to reduce negotiable paper to cash. It is perfectly competent for a seller of cotton to extend credit to the purchaser; and if he does, the transaction is governed by the rules applicable to

any other credit sale. It is undisputed that Butler, Stevens & Company paid Purvis for the cotton without notice of the fact that he had not paid Moseley. If, therefore, the sale from Moseley to Purvis was on credit, Butler, Stevens & Company would be protected as innocent purchasers of the cotton. Purvis's possession of the cotton was presumptive evidence of ownership, and a purchaser from him would have the right to rely on this presumption, unless the sale was for cash, or unless the purchaser had notice of the fact that title was retained by the original vendor.

It is true that Moseley says that the sale was for cash, but this is a question of law which must be determined from the facts, and, in our opinion, Moseley's conclusion as to the character of the transaction was erroneous. The original contract between himself and Purvis was for cash, and Moseley had the right to assume that the two checks which were handed him by young Purvis would be paid on demand, but when he discovered, on reaching home, that one of the checks was post-dated, he was confronted with the necessity of doing one of two things,—either surrendering the check and reclaiming his cotton upon Purvis's failure to pay cash, or acquiescing in the terms of the sale as proposed by Purvis. Unquestionably the parol negotiations between Moseley and Purvis contemplated a cash sale, but the effect of the tender of this post-dated check by Purvis was a proposal to purchase a half of the cotton on credit, with an extension of twelve days within which to pay for it. If at the time of tendering this check Purvis had proposed to Moseley to defer payment for twelve days, and Moseley had agreed, the sale would undoubtedly have been a credit sale. What actually happened does not differ substantially from this. When Moseley returned home he discovered that the check had been post-dated. It is true that two or three days afterwards he sought Purvis, and told him that the sale was for cash, and that he did not intend to sell his cotton on credit. Moseley then had the right to surrender the check and rescind the contract by reclaiming his cotton, but, instead of doing that, he retained the check, upon the statement of Purvis that he might be able to pay it at some time before its maturity. Moseley, therefore, kept the check after a distinct statement by Purvis that he could not pay cash, and with this knowledge allowed Purvis to ship the cotton to Butler, Stevens & Company. Indeed, the record shows that Moseley himself had possession of the bills of lading,

which were drawn in the name of Butler, Stevens & Company, as consignees. Even if under any circumstances the sale could be treated as a cash sale as between Moseley and Purvis, by the plainest principles of equity and justice Moseley would be estopped to assert his title as against Butler, Stevens & Company. He permitted Butler, Stevens & Company to purchase this cotton, knowing that it was to be shipped to them, and took no steps to notify them that Purvis had not paid him for it. The truth is, Moseley had no reason at that time to doubt the solvency of Purvis, and allowed him to dispose of the cotton on his promise to pay for it a few days thereafter. It would be manifestly unfair, under these circumstances, to make Butler, Stevens & Company pay for the cotton twice. Even treating Butler, Stevens & Company and Moseley both as innocent parties, under the undisputed evidence Moseley, having brought about the situation, ought to suffer the loss rather than Butler, Stevens & Company. We think, therefore, that the evidence demanded a verdict in favor of the defendants, and that the court erred in overruling their motion for a new trial.

2. Complaint is made that the court refused to allow the defendants to file a plea of estoppel by former judgment. The plea is not set forth in the main bill of exceptions or in the exceptions pendente lite. It appears, in the recitals in the exceptions pendente lite, that on the day on which the four bales of cotton now being sued for were sold to Purvis, but at a different time, three other bales of cotton were sold to Purvis on cash sale, and that the settlement by the two checks which were delivered to Moseley covered the seven bales, one of the checks being payable on demand and the other post-dated twelve days. It is further recited in the exceptions that a former suit was brought by the present plaintiff and Betsey Moseley, jointly, to recover three bales of cotton, and resulted in a verdict in favor of the defendants. It is also alleged in the exceptions that the defendants claim that the same issues were involved in both suits, and that the judgment in the first case concluded the plaintiff in the present case. It is impossible to determine from the exceptions whether this contention of the defendants is well founded. The record in the former suit should have been attached to the plea, and both the plea and the record should have been exhibited with the exceptions, in order that the court might see whether the defendants' contention that the plaintiff

was concluded by the judgment in the former case was well founded. For this reason it can not be held that the court erred in disallowing the amendment undertaking to set up an estoppel by former judgment.                                        *Judgment reversed.*