40856. NAPIER et al. v. CITY PRODUCTS CORPORATION.

DECIDED MARCH 11, 1965.

*Nall, Miller, Cadenhead & Dennis, James W. Dorsey,* for plaintiffs in error.

*Troutman, Sams, Schroder & Lockerman, Henry B. Troutman, Jr.,* contra.

PANNELL, Judge. Campbell Napier and E. T. Byers, a partnership, brought suit against City Products Corporation (Butler Brothers Division, successor to Butler Brothers), seeking recovery of rent under a contract of lease entered into between the plaintiffs and Butler Brothers for store space in a shopping center for the months of April, 1962, through July, 1963, inclusive, except for the sum of $559.02 to be credited thereon, claiming said rents under Paragraph (a) of Article I of the lease which reads, in part, as follows: "In consideration of said demise and lease, the Tenant covenants and agrees: (a) To pay to the landlord as rent for the demised premises the sum of Five Thousand Five Hundred ($5,500.00) Dollars per annum, in equal

monthly installments, in advance, on the first day of each and every month during the term hereof, and in addition thereto, for each year of the term of this lease (the years referred to being the first twelve month period after the date rent shall commence to accrue as herein provided and each succeeding twelve month period thereafter) in which gross sales made by the tenant in the demised premises shall exceed the amount of One hundred twenty two thousand two hundred twenty ($122,-220.00) Dollars, to pay to the landlord for such year, an amount equal to four and one half percent of such gross sales in excess of said One hundred twenty two thousand two hundred twenty ($122,220.00) Dollars up to and including⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ Dollars. Such additional rent, if any, shall be payable on or before thirty (30) days after the expiration of the year for which the same is due."

The petition alleged that a previous action was filed for rent for the months of October, 1961, through March, 1962, which action was determined in plaintiff's favor in the trial court and on appeal in this court. In addition to rent, the petition in the present case seeks recovery of expenses of litigation, including attorney's fees. The defendant answered, admitting the facts as to the previous suit, but denying that it owed any rent under Paragraph (a) of Article I of the lease and claiming that the failure of the plaintiff lessors to have a ready-to-wear store in a shopping center permitted the defendant to abate the rent under Paragraph (g) of Article III of the lease and filed a counterclaim for overpayment of rent in the amount of $506.17. Paragraph (g) of Article III reads in part: "The landlord hereby covenants and agrees that the shopping center of which the demised premises are a part will include the following stores: Big Apple Supermarket of not less than 18,000 sq. ft. (see Article III Par. (h) hereunder) a drug store, ready to wear, laundry, plus other stores—total rental store area approximately 35,000 square feet. The landlord further covenants and agrees that good and valid leases have been signed with such stores calling for the commencement of rental on or before February 1, 1960, and their operation for business with the public during the entire term of this lease. It is covenanted and agreed that

no rental shall accrue hereunder until the above stores are open for business with the public unless tenant elects to open his store prior to the time when all of the above stores are open for business with the public, in which event, the tenant covenants and agrees to pay to the landlord as rental for the demised premises in lieu of any other rental, and until such time as all of said stores are open for business with the public, an amount equal to four (4%) percent of gross sales made by the tenant in the demised premises during each month in which said tenant is open for business and in which all of the above stores are not open for business with the public. In the event the total annual amount required by this clause to be paid by the tenant to the landlord for the first twelve (12) month period or any succeeding twelve (12) month period thereafter equals an amount less than three-fourths of the minimum annual rental required to be paid under paragraph (a) of Article I hereof, then, thereafter all rental will abate hereunder until such time as all of the above stores are open for business with the public. In the event any of said stores are closed for business for any reason whatsoever for a period of twelve (12) months or more, during the term of this lease, tenant may, at its option, upon written notice to the landlord, given within ninety (90) days after any such store unit shall have remained closed for such twelve months' period, cancel this lease."

Upon the trial, the evidence disclosed that a Mr. and Mrs. Marshall entered into a sublease with the tenant, and on September 30, 1960, opened a "Ben Franklin Variety Store" under a franchise from the tenant and operated until May 20, 1961, when they closed. Rental during said time was paid by the defendants to the plaintiff under the provisions of Paragraph (g) of Article III of the lease; that is, a percentage of the gross sales, the amount of which does not appear from the record. After the store closed, the defendants continued to pay a percentage rental to the plaintiffs through September, 1961, based upon an estimate of what gross sales would have been. Later, the defendant subleased the premises to Garner & Witt, Inc., for a period of two years and 11 months, at an annual rental of $6,000. Garner & Witt, Inc., operated a store, but not a Ben

Franklin Store or a variety store of any type, from March 1, 1962, until May 20, 1963. The rent recovered in the previous suit covered one month of this occupancy. During the period of occupancy of Garner & Witt, Inc., its payments under the sublease were paid over to the plaintiffs under an agreement between the parties that the payment and receipt of such sums was without prejudice to the rights of the parties as to the amount of rentals, if any, which might become due or owing under the lease for any period of time covered thereby. After determination of the previous litigation these accumulated sums were used to pay the rent through March, 1962, to the plaintiffs, in accordance with the judgment of the court, leaving an amount of $559.02 to be applied against any rentals thereafter due.

The evidence was in conflict as to whether or not a ready-to-wear store had ever been opened in the shopping center. There was evidence introduced also that both parties contemplated the operation of a Ben Franklin Variety Store on the leased premises during the negotiations for the lease. At the close of the evidence, the trial judge, hearing the case without a jury, found that a ready-to-wear store was never opened at the shopping center and that there was no rental due to the plaintiffs under the lease and rendered a judgment in favor of the defendant on its counterclaim. The plaintiffs in their bill of exceptions to this court assign error on the admission in evidence of the sublease between the defendant and Mr. and Mrs. Marshall, and on the judgment denying their claim for rent.

■ Under the pleadings and evidence a proper construction of the lease, and particularly Article III, paragraph (g), as quoted above, will control the determination of the case, the trial judge having found upon proper proofs that no ready-to-wear store was ever opened in the shopping center. In the provisions of the lease above referred to, the lessors covenanted to open certain businesses, including a "ready-to-wear" store, and it is expressly covenanted that "no rental shall accrue" under the lease until these stores "all open for business with the public." In the event the tenant elects to open prior to that time the tenant agrees to pay "as rental . . . in lieu of any

other rental" until said stores are opened, a percentage of gross sales during each month the "tenant is open for business and all of the other stores are not open for business." It clearly appears from these provisions: (1) that rentals under paragraph (a) of Art. I (which we will hereafter refer to at times as the base rentals) do not accrue until all the stores covenanted to be placed in the shopping center are open; and (2) until such time the only rental to which the lessors are entitled is a percentage of gross sales while the tenant is open for business (which we will hereafter refer to at times as the alternate rental); and (3) no provision is made for the payment of any rentals while the tenant is not open for business and all the other stores covenanted to be placed in the shopping center are not open. So, we conclude that the tenant owes no alternate rental under the lease for the period during which its store was not open for business on the leased premises, nor would it under any circumstances owe any rental under paragraph (a) Art. I, the base rental, unless and until all the stores, covenanted to be opened, are in fact opened.

It now becomes necessary to determine whether the tenant owes any rentals based upon a percentage of gross sales under the provisions of Art. III, par. (g) of the lease for sales made during the time Garner & Witt, Inc. were open for business on the demised premises during the months of April to the time they ceased business on May 20, 1963. The lease provides that in the event the total annual amount required by Art. III (g) to be paid by the tenant to the landlord for the first 12-months period, or any succeeding 12-month period thereafter, is less than three-fourths of the minimum annual rental required to be paid under par. (a) of Art. I, then, thereafter all rental will abate until such time as all of the stores are open for business with the public. This provision of the lease sets up successive 12-month accounting periods for the determination of whether the percentage or alternate rent involved is less than the amount required so as to abate such rent, beginning with the time a store is first opened on the demised premises; and it is not permissible for the tenant to use a 12-month accounting period hereunder other than one of those provided for, that is, a tenant

cannot use a 12-month period lying partly within two of the 12-month periods provided in the lease. The alternate rental accruing during the 12-month period in which the percentage or alternate rentals are less than three-fourths of the minimum annual or base rental, does not abate, but only the alternate rent thereafter.

The 12-month period referred to is a 12-month period when the tenant is paying the alternate or percentage rentals and since the tenant pays such rent based on a percentage of monthly sales and pays monthly only when the tenant is open for business, as is expressly provided, then the months the tenant is not open for business and not required to pay rent cannot be counted in ascertaining "the total annual amount" of "monthly" rentals for the particular 12-month period.

There is no proof in the present case as to the amount of percentage rentals paid during the first 12 months after the opening of the store on the demised premises, so any subsequent abatement of rents based on this first 12-month period is unauthorized by the evidence, and this is true whether or not the payment and acceptance of alternate rent based on estimates of gross sales while the store on the demised premises was not open, was or was not a waiver of the fact that the store was not open so that these rentals could be considered in making the calculations for abatement of rent.

The second 12-month period was composed of time when the store on the demised premises was not open and times when it was, and while the evidence discloses the gross sales during the time said store was open and that 4 percent of such gross sales were less than three-fourths of the minimum annual rental required under paragraph (a) of Art. I of the lease; yet, the failure to keep the store open for this entire 12-month period prevents the occurrence of the factors necessary for abatement of rent after this second 12-month period. Therefore, the percentage or alternate rentals becoming due after this second 12-month period did not abate. The trial court, therefore, erred in its judgment denying a recovery of percentage rentals based on gross sales made during the second 12-month period and thereafter. Recovery should have been allowed with a credit thereon for the amount previously overpaid by the tenant.

■ The lessors contend that the provisions of paragraph (g) Art. III apply only to the operation of a Ben Franklin Store because letters written and statements made during the negotiations for the lease showed that it was the intent of the tenant to operate a Ben Franklin Store, and that certain provisions of the lease considered with these factors show that the premises could only be used for such purposes. All prior negotiations, whether oral or written, are merged into the final written agreement formally executed between the parties, *Chelsea Corp. v. Steward,* 82 Ga. App. 679 (62 SE2d 627), *American Associated Companies v. Vaughn,* 76 Ga. App. 121 (44 SE2d 921), and this is true even though the writing does not express the contract actually made. The parties nevertheless must abide by the writing until it is properly reformed. *White v. Rainwater,* 205 Ga. 219 (52 SE2d 838). There being no provision in the contract of lease limiting the use of the demised premises to "Ben Franklin Stores," and there being no proof of an independent agreement to that effect which was the consideration or inducement to the execution of the lease (see *Fisher v. J. A. Jones Constr. Co.,* 87 Ga. App. 317, 73 SE2d 587), the terms of the lease must govern. The tenant covenanted and agreed "to use and occupy the said premises for the sale, storage or display of goods, wares and merchandise . . ." While the lease authorized the tenant to erect an outdoor sign for "Ben Franklin Stores" this does not limit the use of the premises to a particular type of store, nor does the provision in the lease wherein the landlord agreed that they would not lease or permit any portion of the shopping center within 1,000 feet of the demised premises to be used for any "business similar to the business of the tenant, that is to say, for any variety store, or any business conducted under the name of a 5 and 10 Cent Store, 5¢ to $1.00 Store, or similar name." This latter provision is not a limitation upon the type of business to be conducted by the tenant upon the premises, but merely provides protection for a particular type of business.

Plaintiffs also contend that the provisions for abatement of rent after the opening of a store on the demised premises and before all the stores in the shopping center are opened contained

in paragraph (g) of Art. III of the lease are applicable only when a store opened upon the premises is one owned and operated by the tenant in the main lease, and that these provisions have no application where the store opened on the demised premises is operated by a sublessee of the defendant tenant. Paragraph (n) of Art. I of the lease provides "that the tenant, Butler Brothers, shall have and is hereby given the unqualified right or privilege, at its option, of subletting the demised premises, subject to all the terms and conditions respecting occupancy and use herein contained provided that the tenant shall remain liable hereunder." In our opinion, under this provision of the lease, paragraph (g) of Art. III of the lease applies to a store on the premises operated by the sublessee of the tenant. However, even if we should agree with the plaintiff's contention that the provisions of paragraph (g) of Art. III as to abatement of rent do not apply to a store operated by a sublessee, and, because of this, the conditions for the abatement of percentage or alternate rentals have not occurred, then it necessarily follows also that the provisions for the payment of percentage or alternate rentals in the first place have likewise not occurred. It necessarily follows then that the provision that "no rental shall accrue hereunder" until the other stores are opened for business with the public unless the tenant elects to open its store, would prevent the accrual of any rent whatsoever. It is apparent, therefore, that the result desired by the plaintiff does not follow from the construction claimed.

■ In view of the allegations of the petition relating to the previous litigation between the parties, it is necessary to make some determination as to the effect thereof in the present case. "Under the doctrine of res adjudicata, whenever there has been a judgment by a court of competent jurisdiction in a former litigation between the same parties based upon the same cause of action as a pending litigation the litigants are bound to the extent of all matters put in issue by the pleadings in the previous litigation. Civil Code (1910) § 4336 [Code of 1933, § 110-501]; *Perry v. McLendon*, 62 Ga. 598; *Hill v. Cox*, 151 Ga. 599, 604 (107 SE 850); *Hollinshead v. Woodard*, 128 Ga. 7, 15 (57 SE 79); *Bostwick v. Perkins*, 1 Ga. 136, 139; *Loganville Banking Co. v. Forrester*, 17 Ga. App. 246 (87 SE 694); *Fowler v.*

*Davis,* 1 Ga. App. 549 (57 SE 939). A somewhat different rule applies in regard to the doctrine of estoppel by judgment, since the latter doctrine has reference to previous litigation between the same parties based on a different cause of action. *Worth v. Carmichael,* 114 Ga. 699 (1) (40 SE 797); *Draper v. Medlock,* 122 Ga. 234 (50 SE 113, 69 LRA 483, 2 AC 650). In the latter case, there is an estoppel by judgment only as to such matters as were necessarily or actually adjudicated in the former litigation. That is to say there is an estoppel by judgment only as to such matters within the scope of the previous pleadings as necessarily had to be adjudicated in order for the previous judgment to be rendered, or as to such matters within the scope of those pleadings as might or might not have been adjudicated, but which are shown by aliunde proof to have been actually litigated and determined." *Farmer v. Baird,* 35 Ga. App. 208 (132 SE 260). "As the basis of a plea of res adjudicata, it must be shown that the action to which the plea is interposed is the same as a prior action which has been concluded by a judgment, and by reason of which the prosecution of a pending action is barred, 'The general rule is that where a judgment is relied upon as an estoppel, or as establishing a particular state of facts of which it was the judicial result, it can be proved only by offering in evidence a complete and duly authenticated copy of the entire proceeding in which the same was rendered; yet, where the only direct object to be subserved is to show the existence and contents of such judgment a properly authenticated copy of the judgment entry of a court of record possessing general original jurisdiction, is admissible, without more.' *Weaver v. Tuten,* 138 Ga. 101 (2) (74 SE 835)." *Scarborough v. Edgar,* 176 Ga. 574, 580 (168 SE 592).

In view of the above rulings, the allegation in the petition in the present case that the plaintiffs brought an action for rent due under the same lease from October, 1961, through March, 1962, inclusive, which action was determined in their favor in the lower court and on appeal to this court is not sufficient pleading or sufficient proof, although admitted, in the absence of additional evidence thereof to present to the court said prior action either as res judicata or estoppel by judgment as to subsequent rents sought to be recovered in the present case. *Butler,*

*Stevens & Co. v. Moseley,* 14 Ga. App. 288 (2) (80 SE 789);
*Jones v. Schacter,* 29 Ga. App. 132 (2) (114 SE 59); *Jones v.
Schacter,* 31 Ga. App. 709 (121 SE 691); *Hamlin v. Johns,* 41 Ga.
App. 91 (2) (151 SE 815); *Coolidge v. Sandwich,* 49 Ga. App.
564 (1) (176 SE 525); *Scarborough v. Edgar,* 176 Ga. 574, supra.
Nor is the previous case the law of the case as the previous
case is not a prior appeal of the present one, and this court
cannot take judicial cognizance of the rulings or facts in that
case in adjudicating the present one. *Carten v. Loveless,* 192
Ga. 715 (16 SE2d 711); *Gray v. Bradford,* 194 Ga. 492 (22
SE2d 43). However, the prior case is authority for the rulings
therein made and the construction therein placed upon the lease,
as any other case would be, and must be followed unless over-
ruled.

■ It is obvious from the foregoing portions of this opinion
that the construction which we have placed upon the lease in
the present case is different from the construction placed upon
it when this same lease was before this court for construction
in the previous litigation between the parties. See *City Prod-
ucts Corp. v. Napier,* 107 Ga. App. 733, supra. The judgment of
the lower court, affirmed by this court, is as follows: "The
within and foregoing matter having come on regularly for hear-
ing before me without the intervention of a jury, and after
considering the evidence and the stipulations entered into by the
parties, the court finds it unnecessary to determine whether or
not the Jennings McConnell is or is not a ready-to-wear store.
Article III of the lease provides that the tenant, the defendant
herein, is not required to occupy or operate the store or to pay
rent thereon until such time as the landlord has complied with
the provisions of the lease with reference to the types of stores
guaranteed to be leased by the plaintiff. An exception to this
abatement of all rent is provided for where the defendant elects
to operate prior to such completion and a substitute percentage
rent is therein provided. The lease thereafter provided that at
the expiration of twelve months, after the amount paid under
the substitute rent formula, does not amount to three-fourths
of the minimum rent that all subsequent rent will abate.

"Under the undisputed evidence as contained in the stipulation

the defendant licensee operated from September 30, 1960, until May 20, 1961, a period of less than twelve months. The defendant at that point elected to cease operation. There being no provisions in the lease authorizing such conduct, and the twelve months period not having been complete, the court is of the opinion that the rent does not abate."

The court then rendered a judgment for rents under paragraph (a) of Article I. We have thoroughly considered the facts of this case and the prior case and the terms of the lease and it is our opinion that this court erred in its previous construction of the lease by holding that if the abatement of percentage or alternate rentals did not occur, the tenant then owed base rentals under paragraph (a) Art. I of the lease. The base rentals provided for under paragraph (a) Art. I of the lease can have no application so long as all of the stores, covenanted by the landlord to be opened are not opened. We therefore overrule the decision in *City Products Corp. v. Napier*, 107 Ga. App. 733, supra, in that particular, and follow it in its holding that the alternate rental must be paid each month during the particular 12-month period before the amount of such rentals can be used to abate the alternate rental.

*Judgment reversed. Felton, C. J., Nichols, P. J., Bell, P. J., Frankum, Jordan, Hall, Eberhardt and Russell, JJ., concur.*